IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Heather B. and Nozar Nick S., Parents and Guardians and Next Friends of S.S., a Minor with Disabilities,<br><br>    Plaintiffs<br><br>vs.<br><br>Houston Independent School District,<br><br>    Defendants | Civil Action: 4:17-cv-3579 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Come now, Heather B. and Nozar "Nick" S., parents /guardians/next friends of S.S., ("Plaintiff Parents") a minor student with a disability ("Plaintiff S.S."), collectively termed Plaintiffs herein, and bring this Complaint against Houston Independent School District (hereinafter, "Defendant HISD") as follows:

**1. INTRODUCTION**

1.1   This case is about Plaintiff S.S., a legally blind child who is presently in the fifth grade and who has been deprived of special education and related services for years.

1.2   The State of Texas and its school districts must identify, locate, and evaluate all students who may be eligible for special education and related services consistent with the Individuals with Disabilities Education Improvement Act, ("IDEA"), 20 U.S.C. § 1400, et seq. This is known as the "Child Find" process. 20 U.S.C. § 1412(a)(3); 20 U.S.C § 1412(a)(10)(A)(ii). The Child Find process is a basic duty of school districts, and parents are entitled to an adequate remedy if a school district fails to identify a child, because of the paramount importance of properly identifying each child eligible for services. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009).

1

1.3     Unbeknownst to Plaintiffs, for some period of time, the Texas Education Agency encouraged school districts to NOT identify children with disabilities, recommending that school districts limit the percentage of students with disabilities to 8.5% of the school population.

1.4     In 2016, the Houston Chronicle issued a series of articles investigating this practice, and Plaintiff S.S. was featured in an article.[1] The 2017 Texas Legislature forbade the Texas Education Agency from utilizing the 8.5% cap.[2] The United States Department of Education, Office of Special Education Programs, advised the Texas Education Agency that it could not utilize the 8.5% cap. *Letter to Morath*, 116 LRP 42430 (OSERS October 3, 2016).

1.5     Meanwhile, during the time the cap was in effect, hundreds of thousands of children were not "found" and were not provided special education and related services. Plaintiff S.S. is one of the unfound children and she is entitled to an adequate remedy for the years she was left "unfound."

## 2. THE PARTIES

2.1     Plaintiff S.S. is the minor plaintiff in this case. Plaintiff Heather B. is her mother. Plaintiff Nick S. is her father. The student's initials, S.S., are used in compliance with General Order No. 2004-11 of the United States District Court, Southern District of Texas to protect the minor's privacy and Federal Rule of Civil Procedure Rule 5. The full identity of the Plaintiffs is known to Defendant HISD, but can be fully revealed to the Court at a later date, if necessary.

2.2     Plaintiff S.S. is legally blind in both eyes as a result of Retinopathy of Prematurity, essentially blindness resulting from her premature birth. This is a permanent condition. Plaintiff S.S. is currently in fifth grade. She has average intelligence. She struggles with math skills. She has never received instruction in Braille, has had very limited (a few lessons) in use of a white

---

[1] The series investigating the practice can be found at: http://www.houstonchronicle.com/news/houston-texas/houston/article/In-Texas-even-blind-and-deaf-children-can-t-10822708.php (Last accessed on November 21, 2017 at 10:44 am).

[2] The statutory change was passed as Senate Bill No. 106, amending the state education code at 29.0011.

cane, and has had very little instruction in the use of assistive technology to meet her unique needs. Plaintiff S.S. presently attends The Joy School, a private school, at the expense of the Plaintiff Parents. The Joy School is physically located within the Defendant HISD's boundaries. Plaintiff S.S. has not received, and continues to not receive, any direct special education or related services from Defendant HISD at this time.

2.3    At all times material to this action, Plaintiff S.S. either resided within the Defendant HISD's boundaries, or was entitled to be identified as IDEA eligible by Defendant HISD because she attended a private school located within the boundaries of Defendant HISD.

2.4    Defendant HISD is a public school district in the State of Texas, is the recipient of federal funding through the State of Texas pursuant to the IDEA, and is obligated to fully comply with the IDEA, all of its related federal regulations and Chapter 89, the Texas special education rules.

2.5    Defendant HISD was responsible to identify Plaintiff S.S.'s eligibility for special education and related services as either her resident district or as her "proportionate share" district.

## 3. JURISDICTION AND VENUE

3.1.   This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq. (2004), 34 C.F.R. § 300 et seq., and Texas special education law at 19 Tex. Admin. Code, Chapter 89. This Court has subject-matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1400 et seq. and specifically pursuant to 20 U.S.C. § 1415(i)(2) and (i)(3)(A), as Plaintiffs are aggrieved by the decision of an administrative hearing officer in a hearing conducted pursuant to the IDEA. The Court also has jurisdiction over the related state claims.

3.2    Venue in this Court is proper under 28 U.S.C. § 139l(b).

## 4. OVERVIEW OF IDEA'S CHILD FIND REQUIREMENT AND PROPORTIONATE SHARE SERVICES AND LACK OF CHILD FIND

4.1    The IDEA requires the State of Texas and all of its school districts, including Defendant HISD to locate, identify and evaluate all students who may be eligible for special education and related services pursuant to the IDEA. 20 U.S.C. § 1412(a)(3) provides that all children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are to be identified, located, and evaluated. The statute requires a practical method be developed and implemented to determine which children with disabilities are currently receiving needed special education and related services. This is known as the Defendant HISD's "Child Find" duty and is the first step in the provision of special education and related services for children with disabilities.

4.2.    If a child resides within the Defendant HISD school district, the Defendant HISD must comply with its Child Find responsibilities, and then, if the child is eligible for special education and related services, Defendant HISD must develop an Individual Education Program ("IEP") for the student and provide special education and related services for the child consistent with the IEP. 20 U.S.C. § 1401(9); § 1414(d).

4.3.    In addition to providing special education and related services to children who live within the Defendant HISD's district, Defendant HISD is responsible to provide a proportionate share, or an equitable amount of services (based on some percentage of the special education funding it receives), to IDEA eligible children who are attending private schools within the district boundaries. These children are referred to as receiving "proportionate share" services. The Defendant HISD develops a service plan for a proportionate share child, and works with the private school to assist the child. 34 C.F.R. § 300.132.

4.4     To determine which children to serve through the proportionate share system, Defendant HISD's Child Find duty applies to children who do not live in Defendant HISD but who attend private schools that are physically located within the Defendant HISD. This is commonly referred to as a Child Find duty for a child who is a "proportionate share" child.  20 U.S.C. § 1412(a)(10)(A)(iii).

4.5     On information and belief, Defendant HISD's proportionate share system specifically excludes all direct services and offers only indirect services to IDEA eligible private school children.

4.6     Defendant HISD's Child Find duty does not require a parent to ask for their child to be located, identified or evaluated.

4.7     Defendant HISD initially identified Plaintiff S.S. as a preschool student in the 2009-2010 school year because she was blind. Plaintiff S.S.'s vision has never improved and is a permanent condition. From the spring of 2010 until after the due process hearing was requested on June 7, 2017, Defendant HISD never provided Plaintiff S.S. with any special education services as required under the IDEA, either through a traditional IEP or through a proportionate share service plan.

4.8     Defendant HISD is presently providing only indirect proportionate share services to Plaintiff S.S. at The Joy School, consisting of one observation by an HISD Teacher of the Visually Impaired. She is not receiving any Orientation and Mobility training, or training or instruction from HISD.

4.9     Plaintiffs are not seeking to challenge the current very limited proportionate share services presently offered by Defendant HISD, pursuant to the IDEA and Texas special education law. Rather, Plaintiffs are complaining that Defendant HISD's failure to provide Plaintiff S.S. **any**

proportionate share services from June 14, 2014, when Plaintiff S.S. moved to Pearland but remained in a private school in Defendant HISD's boundaries, was a blatant denial of Child Find, and the Hearing Officer's Decision leaves Plaintiffs with no equitable remedy for this denial.

## 5. HISTORY OF THE DISPUTE

5.1     Despite being in fifth grade and legally blind, Plaintiff S.S. has never been taught or even exposed to Braille instruction. Braille instruction can be provided as early as preschool. Plaintiff S.S. received only very limited instruction in use of a cane for travel, during summer 2017 through TSBVI and has limited ability to maneuver in her environment for lack of orientation and mobility training.  Plaintiff S.S. has limited experience with assistive technology designed to help children who are blind.

5.2     Plaintiff S.S. was born prematurely in 2007, was hospitalized in a neonatal unit for seven months, suffered from serious medical problems and complications, and was considered legally blind from birth. Defendant HISD identified her as a student qualified for Early Intervention Services, including for vision services and a feeding tube.

5.3     In January 2010, Defendant HISD developed an Individual Education Program ("IEP") for Plaintiff S.S., and she began attending a preschool program for children with disabilities known as the "PPCD" program, at a school near her home.

5.4     As a preschooler, Plaintiff S.S. was placed on the Texas Education Agency registry for visually impaired students. Placement on the registry should have ensured that Plaintiff S.S. was somehow tracked or followed to ensure she received necessary special education and related services as a blind student.

5.5     In the spring of 2010, Plaintiff Parents became concerned about Plaintiff S.S.'s safety at the Defendant HISD's PPCD program. Plaintiff S.S. became ill as a result of attending the PPCD

6

program and had to be hospitalized. Plaintiff Parents discussed their concerns with Defendant HISD staff, and ultimately removed S.S. to a private school to protect her physical well-being. Plaintiffs asked if they could still have special education services for her at the private school, and Defendant HISD staff assured the Plaintiff Parents in writing that would occur.

5.6.    From the spring of 2010, when Plaintiff S.S. was removed, until after June 7, 2017, when the underlying due process hearing request was filed, Defendant HISD never again provided, or even offered to provide, Plaintiff S.S. any special education services.

### 6. NATURE OF THE ACTION AND RELIEF SOUGHT

6.1    On June 7, 2017, Plaintiffs filed a request for a hearing, pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, et seq., complaining that Defendant HISD had failed to timely and accurately locate, identify, and evaluate Plaintiff S.S. as a child eligible for special education and related services under the IDEA. In other words, that Defendant HISD had failed its Child Find duties. Plaintiff S.S. was the Petitioner in the administrative proceeding. Defendant HISD was the Respondent.

6.2    The TEA originally assigned State Office of Administrative Hearings Administrative Law Judge Cathy Egan to the case, which was designated as *S.S. v. Houston Indep. Sch. Dist.*, *Dkt. No. 248-SE-0617*.

6.3    On July 27, 2017, TEA reassigned the case to a second hearing officer, Hearing Officer Sherry Wetsch, an Independent Hearing Officer with the Texas Education Agency.

6.4    On August 21, 2017, Hearing Officer Wetsch began an evidentiary hearing on the Defendant HISD's Motion for Summary Judgment. Witnesses were heard and evidence was submitted. The evidentiary hearing was continued to an additional date of September 14, 2017.

6.5    Without any indication as to why, on August 29, 2017, the case was reassigned from

Hearing Officer Wetsch to a third hearing officer, Hearing Officer Lucius Bunton, another Independent Hearing Officer of the Texas Education Agency.

6.6     The Texas Education Agency's repeated reassignment of this case caused unwarranted delay and an unfair due process hearing contrary to the IDEA, 20 U.S.C. § 1415. Plaintiffs were denied discovery during the hearing process despite specific requests for same. Hearing Officer Wetsch heard day one of the evidentiary hearing on Defendant HISD's Motion for Summary Judgment but Hearing Officer Bunton heard the second day.

6.7     After completion of the evidentiary hearing, Hearing Officer Bunton issued a decision (hereinafter, "Decision") on October 24, 2017. Hearing Officer Bunton denied Plaintiffs all relief. See Decision of Hearing Officer, attached as Exhibit A.

6.8     On November 4, 2017, Hearing Officer Wetsch provided Counsel herein a letter from herself to the Comptroller for the Texas Education Agency in which she asserted that she ceased her appointment as a hearing officer because she was concerned that the TEA was infringing upon her judicial independence. A copy of this is attached as Exhibit B. Plaintiffs were unaware of this problem prior to receipt of this letter.

6.9     This action under the IDEA is an appeal of the decision of a Special Education Hearing Officer, appointed by the Commissioner of Education of the State of Texas, to consider the administrative due process hearing request filed against Defendant HISD, on behalf of Plaintiff S.S., a student with a disability within the meaning of the IDEA.

### 7. FACTUAL BACKGROUND

7.1     Plaintiff S.S. has gone years without the necessary help because of the Defendant HISD's failure to comply with its Child Find duties. Plaintiff S.S. desperately needs direct instruction from a Teacher of the Visually Impaired, instruction in Orientation and Mobility, and assistance

8

with Assistive Technology. There is no real dispute between the parties that Plaintiff S.S. needs this type of instruction, as it is based upon an Independent Evaluation completed by Emily Gibbs, a Teacher of the Visually Impaired. Plaintiff S.S. is presently not receiving any direct instruction or training through Defendant HISD's proportionate share program.

7.2     First, HISD failed to provide Plaintiff S.S. required services and left S.S. in an unsafe environment in her HISD preschool program. This lead, in the spring of 2010, to the Plaintiff Parents removing Plaintiff S.S. from the PPCD program and enrolling her in a private preschool. When Plaintiff Parents gave notice to HISD staff about removing S.S., and asked in writing (via email) about HISD providing special education services for S.S. at the private school, HISD staff emailed Plaintiff Parents that they would provide S.S. with services at private school. HISD staff did not do so. Defendant HISD never issued a Prior Written Notice about this refusal of services.

7.3     In June of 2014, S.S. moved with her family from Houston to Pearland. Plaintiff S.S. was then seven years old, had been attending the School for Young Children for two years and continued to do so. Plaintiff Parents were not aware that they could obtain services from HISD through the proportionate share services system.

7.4     In July of 2015, Plaintiff Parents sought help by traveling to Boston, Massachusetts to seek help through the Perkins School for the Blind. Perkins told the family about the Texas School for the Blind and Visually Impaired ("TSBVI") and other providers.

7.5     Plaintiff S.S. remained at School for Young Children during the 2015-2016 school year. It is unrefuted that in the fall of 2015, the principal of the School for Young Children specifically referred Plaintiff S.S. to Defendant HISD for evaluation through the Child Find process. But Defendant HISD took no action to evaluate her. Defendant HISD never issued a Prior Written Notice refusing to evaluate Plaintiff S.S. or to find her eligible for special education.

9

7.6     On January 21, 2016, Plaintiffs received a neuropsychological report from Dr. Kerne. The Plaintiff Parents paid for the report. Dr. Kerne's report recommends Plaintiff Parents reach out to the school district for help. Promptly, on the very same day, January 21, 2016, Plaintiff Parents emailed Defendant HISD and their resident district of Pearland Independent School District seeking help for Plaintiff S.S.

7.7     Six months later, on June 7, 2016, Defendant HISD held an ARD and told Plaintiff Parents that Plaintiff S.S. was not eligible for special education services. Plaintiff Parents asked if Plaintiff S.S. could receive special education services if they moved her to a public school. Defendant HISD said no services would be available, because Defendant HISD had determined Plaintiff S.S. did not qualify for special education services.

7.8.    At the same meeting, on June 7, 2016, Plaintiff Parents brought up Plaintiff S.S. going to a new private school, The Joy School, in the fall of 2016. Defendant HISD and the Texas School for the Blind and Visually Impaired suggested that the team wait until Plaintiff S.S. was in her new school to conduct more observation and evaluation. The Plaintiff Parents asked if this was the appropriate time to ask for an Independent Educational Evaluation and were told that it was not the time to do so, because it was "a comma and not a period."

7.9     Defendant HISD issued an insufficient Prior Written Notice at this time. Plaintiff Parents were lead to believe that the parties were going to work as a team when S.S. entered the Joy School in the fall of 2016 to determine if her needs were changed, and that the next step would be an Independent Education Evaluation ("IEE").

7.10    At a September 22, 2016 meeting, TSBVI reported its observations to HISD, stating S.S. should be determined eligible. On October 7, 2016, Defendant HISD's Teacher of the Visually Impaired, Dorothy Vetrano also told Petitioners S.S. would qualify for Vision Services. Tr. 321.

7.11    But, a few months later, at a January 19, 2017 meeting, Defendant HISD again declined to find Plaintiff S.S. eligible for services. This time, Plaintiff Parents were told that Plaintiff S.S. could not be eligible. Plaintiff Parents had questions about the evaluations conducted (the information about which had been wrongly withheld for months) and asked for an Independent Educational Evaluation ("IEE") to address some further concerns about her needs.

7.12    Plans for an IEE proceeded and one of the evaluators was Pearland ISD Teacher of the Visually Impaired, Emily Gibbs, who began her work in March of 2017.

7.13    Not until late May of 2017 did Petitioners receive a Prior Written Notice from the January 19, 2017 meeting indicating that Defendant HISD was finding S.S. not eligible because Plaintiff Parents had asked for an IEE.

7.14    On or about June 1, 2017, TVI Emily Gibbs hinted to the Plaintiff Parents that they would be happy with her report. She would not release the report to the Plaintiff Parents contending it "belonged" to Defendant HISD.

7.15    While the Plaintiff Parents were in the process of requesting a due process hearing, requested June 7, 2017, they received the Gibbs report recommending that Plaintiff S.S. be deemed IDEA eligible as Visually Impaired (due to her blindness) and receive special education and related services.

7.16    After the due process hearing was requested, Defendant HISD conceded that Plaintiff S.S. is IDEA eligible as a Visually Impaired student, entitled to services as proportionate share student.

7.17    Until obtaining counsel in late spring of 2017, Plaintiff Parents were unaware of the difference between proportionate share services for IDEA eligible students and unilateral placement. Had they known earlier, they would have acted earlier on their rights.

7.18   School districts are to provide parents with a Notice of Procedural Safeguards ("Safeguards") to guide them through the IDEA process. The Safeguards are to be provided when parents start the process. It is disputed when and whether Plaintiff Parents received Safeguards and when they received them.

7.19   The Safeguards are confusing. Both the explanation about a Voluntary Private School Placement and Public Reimbursement for Private School indicate that the child must first have to have been receiving special education services from a school district. Because Plaintiff S.S. was being denied eligibility for special education, Plaintiff Parents did not understand if any of the procedures could apply to them.

7.20   After obtaining counsel in the spring 2017, Plaintiff Parents learned what proportionate share services were, what a unilateral private placement is, and about their rights in general. Thus, Plaintiff Parents filed for a hearing when they knew they could have a hearing, which was after obtaining counsel in spring of 2017; they filed within one year of learning about the statute of limitations, again after obtaining counsel.

## 8. THE HEARING OFFICER'S DECISION

8.1   As is his custom, despite a plethora of evidence, Hearing Officer Bunton issued a very short, scant 5 ½-page Decision. The Hearing Officer held in totality for the Defendant HISD, completely contrary to both the documentary and testimonial evidence produced at the hearing, and the law.

8.2   The Decision includes incorrect, or partially incorrect, findings and is incorrect as a matter of law throughout. The Decision does not meet the statutory and regulatory requirements for a special education decision required by 20 U.S.C. § 1415(f)(3)(A) and (E) and 34 C.F.R. § 300.511(c), which mandate that a hearing officer must possess the knowledge and ability to

render and write decisions in accordance with appropriate, standard legal practice.

8.3     The Decision incorrectly finds that Plaintiffs were not entitled to an exception to the Texas one-year statute of limitations.

8.4     The Decision finds that Plaintiff S.S. was initially eligible for special education services in 2008 and January of 2010, but then wholly ignores that eligibility determination throughout the opinion.

8.5     The Decision incorrectly finds that Defendant HISD was first notified about Plaintiff S.S. attending private school in February of 2016.

8.6     The Decision incorrectly asserts that after the parents gave notice on January 21, 2016, the Defendant HISD timely and fully evaluated Plaintiff S.S.

8.7     The Decision ignores and minimizes the Defendant HISD's failure to comply with all requisite procedural requirements as to Child Find from January 21, 2016 through the date of the hearing request on June 7, 2017.

8.8     Without any factual basis, the Decision asserts that Defendant HISD proved Plaintiffs had notice of their right to file timely.

8.9     The Decision incorrectly determines, contrary to law, that Plaintiffs have no remedy other than an Independent Education Evaluation.

8.10    The Decision ignores Defendant HISD's failure to comply with IDEA and state law procedural requirements including the faulty Notice of Procedural Safeguards and wrongly asserts that, because one of the parents is an attorney, the Plaintiff Parents should have been aware of certain rights.

8.11    The Decision wrongly concludes that matters are moot and that no material fact is at issue.

8.12    The Hearing Officer ignored entirely the Defendant HISD's failure to provide

13

proportionate share services to Plaintiff S.S. from June 2016 through June 2017. That year was clearly within the statute of limitations, yet Plaintiff S.S. received no proportionate share services because Defendant HISD incorrectly believed she was not eligible.

8.13   The Hearing Officer incorrectly believed that he had no authority to issue equitable relief in the nature of reimbursement for privately obtained evaluations (that Defendant HISD later relied upon), for private school tuition, or for transportation costs.

9.

**CAUSE OF ACTION AND CLAIM FOR RELIEF- IDEA AND CHAPTER 89.**

9.1   Plaintiffs repeat and re-allege paragraphs 1 through 8.13 as if more fully set forth herein, in support of their claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq, and its related regulations and Texas Chapter 89 which is to ensure implementation of the IDEA in Texas.

9.2   The IDEA requires the Defendant HISD to comply with its Child Find mandate and Defendant HISD failed to do so.

9.3   The Hearing Officer's Decision is incorrect and should be reversed.

9.4.   Nothing in the IDEA precludes a hearing officer, or this Court from considering and ordering a complete remedy, including equitable relief to Plaintiffs, for Defendant HISD's failure to comply with its Child Find mandate, which lead to a complete denial of proportionate share services to Plaintiff S.S. from June 2014 through and until after the June 2017 hearing request.

9.5   The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation, to find that the Defendant HISD complied with the IDEA, despite not identifying Plaintiff S.S. as a child eligible for special education from June 2014 until its concession of Plaintiff S.S.'s eligibility after the Plaintiffs requested a hearing in June of 2017.

9.6     As is his custom, the Hearing Officer also erred by blaming the Plaintiff Parents for Plaintiff S.S.'s lack of identification as a child with a disability, incorrectly foisting upon the Plaintiff Parents the responsibility for Child Find, which was the Defendant HISD's duty.

## 10. PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court receive all of the records of the administrative proceedings, as required by the IDEA, incorporating all of the facts and circumstances set forth above. Plaintiffs request that the Court accept jurisdiction and enter judgment against Defendants, and grant the following relief:

(1) enter a judgment reversing and vacating the Hearing Officer's Decision and finding that the Defendant HISD denied Plaintiff S.S. a free appropriate public education for its failure to comply with its Child Find duty;

(2) order that the Defendant HISD reimburse the Plaintiff Parents for evaluations of Plaintiff S.S. they procured and paid for and which Defendant HISD relied upon to eventually determine Plaintiff S.S.'s eligibility for special education;

(3) order that the Defendant HISD reimburse the Plaintiff Parents for the tuition costs, and transportation costs for private schools they procured for Plaintiff S.S. during the time the Defendant HISD failed its Child Find duties and refused to find S.S. eligible for special education and related services, as either a resident student or a proportionate share student;

(4) order Defendant HISD to improve its Child Find policies and practices to ensure that when a student has been previously identified in the HISD as a child eligible for special education, the child is treated as eligible during any review of such eligibility, if the student becomes a proportionate share student;

(5) order that the Defendant HISD immediately commence a training program for its staff in requisite procedures, including Child Find for proportionate share students, unilateral placement procedures, and Prior Written Notice;

(6) award Plaintiffs reasonable attorneys' fees and related costs, incurred in the administrative proceedings;

(7) award Plaintiffs reasonable additional attorney fees and costs incurred in pursuing the current action;

(8) award Plaintiffs prejudgment and post-judgment interest on any and all awards of fees and permissible costs, and

(9) such other and further relief to which Plaintiffs are entitled.

Respectfully submitted this November 21, 2017

By: /s/ *Sonja D. Kerr*
Sonja D. Kerr, Attorney-in-Charge
State Bar No. 24095771
Southern District Bar No. 2952271
Email: skerr@cuddylawfirm.com
Devin Fletcher, of-counsel
State Bar No. 24097693
Southern District Bar No. 3134502
Email: dfletcher@cuddylawfirm.com

Cuddy Law Firm, PLLC
8723 Shoal Creek Blvd
Suite 100, Austin, Texas, 78757
Telephone: (512) 649-3191
Fax: (512) 649-1217

ATTORNEYS FOR PLAINTIFFS