IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

Heather B. and Nozar Nick )
S., Parents and Guardians and )
Next Friends of S.S., a Minor )
with Disabilities, )
 )
       Plaintiffs )     Civil Action: 4:17-cv-3579
 )
vs. )
 )
Houston Independent School District, )
Pearland Independent School District, and )
Texas Education Agency, )
 )
       Defendants. )

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Come now, Heather B. and Nozar "Nick" S., parents /guardians/next friends of S.S., ("Plaintiff Parents") a minor student with a disability ("Plaintiff S.S."), collectively termed Plaintiffs herein, and bring this First Amended Complaint against Houston Independent School District (hereinafter, "Defendant HISD"), Pearland Independent School District (hereinafter, "Defendant PISD"), and Texas Education Agency ("Defendant TEA") as follows:

## 1. INTRODUCTION

1.1    This case is about Plaintiff S.S., a legally blind child who is presently in the fifth grade and who has been deprived of special education and related services for years.

1.2    The State of Texas and each of its school districts must identify, locate, and evaluate all students who may be eligible for special education and related services consistent with the Individuals with Disabilities Education Improvement Act, ("IDEA"), 20 U.S.C. § 1400, et seq. This is known as the "Child Find" process. 20 U.S.C. § 1412(a)(3); 20 U.S.C § 1412(a)(10)(A)(ii). The IDEA requires that: "All children with disabilities residing in the State, including children

who are homeless children or wards of the State *and children with disabilities attending private schools*, regardless of the severity of their disabilities, and who are in need of special education and related services are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related service." 20 U.S.C. § 1412(a)(3). (Emphasis added.)

1.3    Unbeknownst to Plaintiffs, for some period of time, the Texas Education Agency explicitly discouraged Texas school districts from identifying children with disabilities, recommending that school districts limit the percentage of students with disabilities to a "cap" of 8.5% of the school population.

1.4    In the fall of 2016, the Houston Chronicle issued a series of articles investigating the 8.5% cap practice, and Plaintiff S.S. was featured in one of the series of articles.[1] After learning about the cap from the Chronicle article, the United States Department of Education, Office of Special Education Programs, advised Defendant TEA that it could not utilize the 8.5% cap. *Letter to Morath*, 116 LRP 42430 (OSERS October 3, 2016). The 2017 Texas Legislature forbade the Texas Education Agency from continuing to utilize the 8.5% cap.[2] The Texas Legislature did not afford any specific relief to children affected by the cap.

1.5    Meanwhile, during the time the cap was in effect, hundreds of thousands of children were not identified, located and evaluated and were not provided special education and related services. Plaintiff S.S. is one of those children and she is entitled to an adequate remedy for the years she was not identified, located and evaluated and provided special education and related services.

---

[1] The series investigating the practice can be found at: http://www.houstonchronicle.com/news/houston-texas/houston/article/In-Texas-even-blind-and-deaf-children-can-t-10822708.php (Last accessed on January 2, 2017).

[2] The statutory change was passed as Senate Bill No. 106, amending the state education code at 29.0011.

## 2. THE PARTIES

2.1     Plaintiff S.S. is the minor disabled plaintiff in this case. Plaintiff Heather B. is her mother. Plaintiff Nick S. is her father. The student's initials, S.S., are used in compliance with General Order No. 2004-11 of the United States District Court, Southern District of Texas to protect the minor's privacy and Fed. R. Civ. Proc. 5. The full identity of the Plaintiffs is known to Defendant HISD, and Defendant PISD and should be known to Defendant TEA[3] but can be fully revealed to the Court at a later date, if necessary. From 2009 until June 2014, Plaintiff S.S. either resided within the Defendant HISD's boundaries, or was entitled to be identified as IDEA eligible by Defendant HISD because she attended a private school located within the boundaries of Defendant HISD. From June 2014 forward and currently, Plaintiff S.S. has resided within the Pearland Independent School District ("PISD"), attended the School for Young Children from 2014-May 2016 and attended the Joy School from August 2016-present. Both schools are within Defendant HISD's boundaries.

2.2     Defendant HISD is a public school district in the State of Texas, is the recipient of federal funding through the State of Texas pursuant to the IDEA, and is obligated to fully comply with the IDEA, all of its related federal regulations and Chapter 89, the Texas special education rules. Defendant HISD was responsible to identify Plaintiff S.S.'s eligibility for special education and related services as either her resident district or as her "proportionate share" district.

2.3.    Defendant PISD is a public school district in the State of Texas, is the recipient of federal funding through the State of Texas pursuant to the IDEA, and is obligated to fully comply with the IDEA, all of its related federal regulations and Chapter 89, the Texas special education rules. Beginning in June of 2014, Defendant PISD was responsible to identify Plaintiff S.S.'s eligibility

---

[3] Plaintiff S.S. was identified on the state's Blind Registry.

for special education and related services as her resident district.

2.4.    Defendant TEA is the Texas Education Agency which serves as the State Educational Agency pursuant to the IDEA and consistent with 20 U.S.C. § 1412. TEA has an affirmative Child Find duty pursuant to the IDEA to ensure that Plaintiff S.S. was promptly and properly identified for special education services. TEA has responsibility and oversight for the Texas special education hearing system to ensure that it is consistent with the IDEA's mandates.

### 3. JURISDICTION AND VENUE

3.1.    This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq. (2004), 34 C.F.R. § 300 et seq., and Texas special education law at 19 Tex. Admin. Code, Chapter 89. This Court has subject-matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1400 et seq. and specifically pursuant to 20 U.S.C. § 1415(i)(2) and (i)(3)(A), as Plaintiffs are aggrieved by the decision of an administrative hearing officer in a hearing conducted pursuant to the IDEA. The Court also has jurisdiction over the related state claims.

3.2     Venue in this Court is proper under 28 U.S.C. § 139l(b). Defendant HISD and Defendant PISD are located within the Southern District of Texas. Defendant Texas Education Agency has statewide oversight as the state educational agency pursuant to the IDEA. 20 U.S.C. § 1412. TEA oversees 20 Educational Service Centers statewide, which provide assistance to school districts. Region 4 serves the HISD and PISD and at least one of its staff located in Houston, Cecelia Robinson, was in contact with Plaintiffs during the time the parents were searching for help. Thus, venue is proper in the Southern District for Defendant TEA as well.

## 4. OVERVIEW OF IDEA'S CHILD FIND REQUIREMENT, PROPORTIONATE SHARE SERVICES, AND CHILD FIND

**A.     THE TEXAS EDUCATION AGENCY'S CHILD FIND DUTY**

4.1     The IDEA requires the State of Texas and all of its school districts, including Defendant HISD and Defendant PISD, to locate, identify and evaluate all students who may be eligible for special education and related services pursuant to the IDEA. 20 U.S.C. § 1412(a)(3) provides that all children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are to be identified, located, and evaluated. The statute requires the state to have a practical method that is  developed and implemented to determine which children with disabilities are currently receiving needed special education and related services. This is known as the "Child Find" duty and is the first step in the provision of special education and related services for children with disabilities. Any person, including a teacher, private provider (i.e. pediatrician) or parent can refer a child to be evaluated for special education services. Parents, however, have no explicit legal duty to ask for their child to be referred for special education services.

**B.     HOUSTON INDEPENDENT SCHOOL DISTRICT'S CHILD FIND DUTY**

4.2.     If a child resides within the Defendant HISD school district, the Defendant HISD must comply with its Child Find responsibilities, and then, if the child is eligible for special education and related services, Defendant HISD must develop an Individual Education Program ("IEP") for the student and provide special education and related services for the child consistent with the IEP. 20 U.S.C. § 1401(9); § 1414(d);  § 1415.

4.3.     In addition to providing special education and related services to children who live within the Defendant HISD's district, Defendant HISD is responsible to provide a proportionate share, or

an equitable amount of services (based on some percentage of the special education funding it receives), to IDEA eligible children who are attending private schools within the district boundaries. These children are referred to as receiving "proportionate share" services. The Defendant HISD develops a service plan for a proportionate share child, and works with the private school to assist the child. 34 C.F.R. § 300.132.

4.4    To determine which children to serve through the proportionate share system, Defendant HISD's Child Find duty applies to children who do not live in Defendant HISD but who attend private schools that are located within the Defendant HISD. This is commonly referred to as a Child Find duty for a child who is a "proportionate share" child. 20 U.S.C. § 1412(a)(10)(A)(iii).

4.5    On information and belief, Defendant HISD's proportionate share system specifically excludes all direct services and offers only indirect services to IDEA eligible private school children.

4.6    Legally, Defendant HISD's Child Find cannot require a parent to ask for their child to be located, identified or evaluated.

4.7    Defendant HISD initially identified Plaintiff S.S. as a preschool student in the 2009-2010 school year because she was blind. Plaintiff S.S.'s vision has never improved and is a permanent condition. From the spring of 2010 until after the due process hearing was requested on June 7, 2017, Defendant HISD never provided Plaintiff S.S. with any special education services as required under the IDEA, either through a traditional IEP (while she was living in the HISD), or through a proportionate share service plan.

4.8    Defendant HISD is presently providing only indirect proportionate share services to Plaintiff S.S. at The Joy School, consisting of one observation by an HISD Teacher of the Visually Impaired. She is not receiving any Orientation and Mobility training, or training or

instruction from HISD. Staff of The Joy School advised Plaintiffs that Melvin Marx, Orientation and Mobility Specialist from HISD, would observe S.S. one time on December 8, 2017 but on information and belief, they do not know that this has occurred.

4.9     Plaintiffs are not seeking to challenge the current very limited indirect proportionate share services possibly offered by Defendant HISD, pursuant to the IDEA and Texas special education law. Rather, Plaintiffs are complaining that Defendant HISD's failure to provide Plaintiff S.S. **any** proportionate share services from June 14, 2014, when Plaintiff S.S. moved to Pearland but remained in a private school in Defendant HISD's boundaries, was a blatant denial of Child Find, and that the Hearing Officer's Decision leaves Plaintiffs with no equitable remedy for this complete denial.

## C.     PEARLAND INDEPENDENT SCHOOL DISTRICT'S CHILD FIND DUTY

4.10    If a child resides within the Pearland Independent School District ("PISD"), the Defendant PISD must comply with its Child Find responsibilities by locating and identifying the child. The first step is to conduct an evaluation. If the child is eligible for special education and related services, Defendant PISD must develop an Individual Education Program ("IEP") for the student and provide special education and related services for the child consistent with the IEP. 20 U.S.C. § 1401(9); § 1414(d); § 1415.

4.11    Defendant PISD is responsible for the Child Find duty to students residing in its district boundaries. Defendant PISD cannot legally place upon a parent the responsibility to ask for their child to be located, identified or evaluated.

4.12    Defendant PISD has a deficient process to inform parents of children with disabilities about Child Find. Defendant PISD's Child Find system is dependent upon parental request to Defendant PISD's employees who may or may not act to ensure the child is referred. If a parent

makes a written request for special education to Defendant PISD, and Defendant PISD does not respond to the written request, it depends upon parents to re-contact PISD staff to begin the Child Find process.

4.13    Plaintiffs established residence in Defendant PISD in June, 2014.

4.14    Defendant PISD is currently not providing any special education and related services to Plaintiff S.S. who remains in attendance at a private school, the Joy School, located in Houston.

## 5.    PROCEDURAL HISTORY OF THE DISPUTE

5.1    On June 7, 2017, Plaintiffs requested two separate special education due process hearings seeking special education and related services for Plaintiff S.S. before bringing this lawsuit. The due process hearings were filed with the Texas Education Agency pursuant to the Individuals with Disabilities Education Improvement Act ("IDEIA" or "IDEA"), 20 U.S.C. § 1400, et seq. One case was docketed as *S.S., B/N/F H.B. & N.S. vs. Houston Independent School District*, Dkt. 248-SE-0617 ("HISD case"). The other case was docketed as *S.S. B/N/F H.B. & N.S. v. Pearland Independent School District,* Dkt. No. 249-SE-0617 ("PISD case").

5.2    In the HISD case, Dkt. 248-SE-0617, Plaintiffs filed a request for a hearing, complaining that Defendant HISD had failed to timely and accurately locate, identify, and evaluate Plaintiff S.S. as a child eligible for special education and related services under the IDEA.  In other words, that Defendant HISD had failed its Child Find duties, especially as to Plaintiff S.S. while she was a resident and again as she became a proportionate share child.

5.3    In the PISD case, Dkt. 249-SE-0617, Plaintiffs filed a request for a hearing, complaining that Defendant PISD had filed to timely, and accurately locate, identify and evaluate Plaintiff S.S. as a child eligible for special education and related services pursuant to the IDEA. In other words, that Defendant PISD had failed its Child Find duties once Plaintiff S.S. became a resident of

Defendant PISD.

5.4    On June 8, 2017, the TEA assigned State Office of Administrative Hearings Administrative Law Judge Cathy Egan to each of the cases.

5.5    On July 27, 2017, TEA reassigned the cases to a second hearing officer, Hearing Officer Sherry Wetsch, an Independent Hearing Officer with the Texas Education Agency.

5.6    On August 21, 2017, Hearing Officer Wetsch began an evidentiary hearing in the HISD case on the Defendant HISD's Motion for Summary Judgment. Witnesses were heard and evidence was submitted. The evidentiary hearing was continued to an additional date of September 14, 2017.

5.7    After the June 7, 2017 hearings were requested and while they were pending, both Defendant HISD and Defendant PISD conceded that Plaintiff S.S. was a student with a visual impairment eligible for special education and related services pursuant to the IDEA.

5.8    Without any indication as to why, on August 29, 2017, the cases were reassigned from Hearing Officer Wetsch to a third hearing officer, Hearing Officer Lucius Bunton, another Independent Hearing Officer of the Texas Education Agency.

5.9    The Texas Education Agency's repeated reassignment of this case caused unwarranted delay and an unfair due process hearing contrary to the IDEA, 20 U.S.C. § 1415. Plaintiffs were denied discovery during the HISD hearing process despite specific requests for same. Hearing Officer Wetsch heard day one of the evidentiary hearing on Defendant HISD's Motion for Summary Judgment, but Hearing Officer Bunton heard the second day.

5.10   Unbeknownst to Plaintiffs at the time, Hearing Officer Wetsch was criticized by the Texas Education Agency, believed her judicial independence was being affected, and declined to continue as a hearing officer. Without disclosing this, TEA's reassigned both cases to Hearing

Officer Bunton.

5.11    Hearing Officer Bunton convened a two-day hearing for the PISD case and same was held on October 10, and October 11, 2017. During the hearing, Hearing Officer Bunton excluded evidence related to the Child Find matter, including the publicly available Houston Chronicle article featuring Plaintiff S.S. and a parent affidavit (that had been accepted in the HISD case).

5.12    On October 24, 2017, Hearing Officer Bunton issued a decision (hereinafter, "HISD Decision") in the HISD case. Hearing Officer Bunton denied Plaintiffs all relief, finding Defendant HISD did not violate the IDEA, including its Child Find obligations. See HISD Decision of Hearing Officer, attached as Exhibit A.

5.13    On November 4, 2017, Hearing Officer Wetsch provided Counsel herein a letter from herself to the Comptroller for the Texas Education Agency in which she asserted that she ceased her appointment as a hearing officer in these cases, resigning because she was concerned that the TEA was infringing upon her judicial independence. A copy of this is attached as Exhibit B. Plaintiffs were unaware of this problem prior to receipt of this letter.

5.14    On December 8, 2017, Hearing Officer Bunton issued a decision (hereinafter, "PISD Decision") in the PISD case. Hearing Officer Bunton denied Plaintiffs all relief, finding Defendant PISD did not violate the IDEA, including its Child Find obligations. See PISD Decision of Hearing Officer, attached as Exhibit C.

5.15    This action under the IDEA is an appeal of both the HISD Decision and the PISD decision of a Special Education Hearing Officer, appointed by the Commissioner of Education of the State of Texas.

5.16    On November 21, 2017, Plaintiffs filed an Original Complaint before this Court timely appealing the HISD Decision. Dkt. 1.

5.17    Plaintiffs now file this First Amended Complaint to timely appeal the December 8, 2017

Decision in the PISD matter, and to add Defendant Texas Education Agency to this case.

**6.     UNDERLYING FACTS OF THE DISPUTE**

6.1     Presently, Plaintiff S.S. has gone years without the necessary help because of the

Defendant HISD's failure, the Defendant PISD's failure and the Defendant TEA's failure to

comply with its Child Find duties and to provide critically necessary services. There is no dispute

at this point that Plaintiff S.S. is eligible for special education services. Plaintiff S.S. desperately

needs direct instruction from a Teacher of the Visually Impaired, instruction in Orientation and

Mobility, and assistance with Assistive Technology. There is no real dispute between the parties

that Plaintiff S.S. needs this type of instruction, as it is based upon an Independent Evaluation

completed by Emily Gibbs, a Teacher of the Visually Impaired. Plaintiff S.S. is not receiving any

direct special education services as needed. Defendant HISD refuses to provide direct services

on the basis that she is a "proportionate share" child. Defendant PISD declines to provide direct

services unless Plaintiff S.S. attends one of its schools, disrupting her from The Joy School.

Defendant TEA, aware of the problems in Child Find does nothing to assist, and on information

and belief, interfered in the hearing process by its interactions with Hearing Officer Wetsch.

6.2     Plaintiff S.S. was born prematurely in 2007, was hospitalized in a neonatal unit for seven

months, suffered from serious medical problems and complications, and was considered legally

blind from birth. Defendant HISD identified her as a student qualified for Early Intervention

Services, including for vision services and a feeding tube.

6.3     During the 2009-2010 school year,  Defendant HISD developed an Individual Education

Program ("IEP") for Plaintiff S.S., and she began attending a preschool program for children with

disabilities known as the "PPCD" program, at a school near her home. She was, at that point, a

student eligible for special education services pursuant to the IDEA. Defendant HISD never provided any notification that Plaintiff S.S. was not eligible until June of 2016.

6.4     As a preschooler, Plaintiff S.S. was placed on the Texas Education Agency registry for visually impaired students. Placement on the registry should have ensured that Plaintiff S.S. was somehow tracked or followed to ensure she received necessary special education and related services as a blind student.

6.5     In the spring of 2010, Plaintiff Parents became concerned about Plaintiff S.S.'s safety at the Defendant HISD's PPCD program. One concern was that the classroom teacher left the class in the care of an elderly aide at times and the aide had difficulty managing violent outbursts of another student. A second concern was that Plaintiff S.S. became ill as a result of attending the PPCD program and had to be hospitalized. Plaintiff Parents discussed their concerns with Defendant HISD staff, and ultimately removed S.S. to a private school, the STARS Early Intervention Preschool Program at Bertha Alyce Early Childhood School. The STARS program is located within the Houston ISD boundaries. They did this to protect her physical well-being. Plaintiffs asked if they could still have special education services for her at the private school, and Defendant HISD staff assured the Plaintiff Parents in writing that would occur but did not provide the services. Defendant HISD never issued a Prior Written Notice to Plaintiff Parents about this refusal of services.

6.6     After Plaintiff S.S. completed preschool, she enrolled at the School for Young Children also located in Houston, again at parent expense. She continued to attend there for the 2010-2011, 2011-2012, 2012-2013, 2013-2014. During these four years, the Plaintiffs continued to be residents of the Houston ISD. From the spring of 2010, when Plaintiff S.S. was removed, until after June 7, 2017, when the underlying due process hearing request was filed, Defendant HISD

never again provided, or even offered to provide, Plaintiff S.S. any special education services.

6.7     On or about June 14, 2014, Plaintiffs moved to Pearland Independent School District ("PISD.")  Plaintiff S.S. remained in private school at the School for Young Children, in Houston, still at parent expense. Plaintiff S.S. was then seven years old, had been attending the School for Young Children for two years and continued to do so. Plaintiff Parents were not aware that they could possibly obtain services from Defendant HISD through the proportionate share services system.

6.8     In July of 2015, Plaintiffs arranged for Plaintiff S.S. to be evaluated at the Perkins School for the Blind in New England, which confirmed her visual impairment and indicated to the parents that it was "critical" she have a Functional Vision Assessment, Learning Media Assessment, and an Orientation and Mobility Assessment. Perkins told the parents about the Texas School for the Blind and Visually Impaired ("TSBVI") located in Austin, Texas. In August, 2015, the Plaintiffs sought help from TSBVI.

6.9     Plaintiff S.S. returned to School for Young Children for third grade for the 2015-2016 school year. There were issues with safety and vision issues and falling. Plaintiffs learned in the fall of 2015 from Mrs. McBrinn, Principal of the School for Young Children, that private schools could ask for evaluations of children with disabilities through Houston ISD. That request was made by the School for Young Children to Defendant HISD. But Defendant HISD took no action to evaluate her. Defendant HISD never issued a Prior Written Notice refusing to evaluate Plaintiff S.S. or to find her eligible for special education in the fall of 2015.

6.10    In November of 2015, Plaintiffs contacted Cecilia Robinson from Region 4 Educational Service Center requesting help and explaining their situation. An Educational Service Center is a TEA agency. Ms. Robinson indicated she was uncertain who the Plaintiffs should contact for help

but promised to find out. The Plaintiffs checked in with her regularly and eventually in January 2016, Ms. Robinson gave Plaintiffs the names and emails of the contacts for both HISD and PISD special education services.

6.11    On January 21, 2016, Plaintiffs received a neuropsychological report from Dr. Kerne. The Plaintiff Parents paid for the report. Dr. Kerne's report recommends Plaintiff Parents reach out to the school district for help.

6.12    Promptly, on the very same day they received Dr. Kerne's report, January 21, 2016, Plaintiff Parents emailed both Defendant HISD and their resident district of Pearland Independent School District seeking help for Plaintiff S.S. The email reads:

> "Dear Dr. Terry and Ms. Yancy: Good morning. We received your contact information from Cecilia Robinson (Region 4 Education Service Center). We have a 9 year old daughter, S. that is low vision (legally blind, limited peripheral vision, nystagmus). She attends a private school in Houston, but we live in Pearland. We are interested in having her receive vision services, but do not know how to go about doing so and which school district would be able to help. We had S. evaluated at the New England Low Vision Clinic (Perkins) this past summer and they highly recommend an O&M evaluation and vision aid for the classroom. If either or both of you could advise us how to move forward we would greatly appreciate your assistance.
> Warm regards,
> (Signed H.B. and N.S.)

6.13    Defendant PISD received but did not respond to the email.

6.14    In May of 2016, Defendant HISD completed an evaluation of Plaintiff S.S. which contained numerous inaccurate statements including suggesting that S.S.'s visual condition could be improved.

6.15    On June 7, 2016, Defendant HISD held an ARD and told Plaintiff Parents that Plaintiff S.S. was not eligible for special education services. Plaintiff Parents asked if Plaintiff S.S. could receive special education services if they moved her to a public school. Defendant HISD said no

services would be available, because Defendant HISD had determined Plaintiff S.S. did not qualify for special education services.

6.16    At the same meeting, on June 7, 2016, Plaintiff Parents brought up Plaintiff S.S. going to a new private school, The Joy School, in the fall of 2016. Defendant HISD and the Texas School for the Blind and Visually Impaired suggested that the team wait until Plaintiff S.S. was in her new school to conduct more observation and evaluation. The Plaintiff Parents asked if this was the appropriate time to ask for an Independent Educational Evaluation and were told that it was not the time to do so, because it was "a comma and not a period." At the conclusion of the ARD, HISD's staff member, Angela Terry mentioned to Plaintiff Parents that she lived in PISD and was having a hard time getting services for her children.

6.17    Defendant HISD issued a deficient and insufficient Prior Written Notice in June of 2016. Plaintiff Parents were lead to believe that the parties and TSBVI were going to work as a team so that when S.S. entered the Joy School in the fall of 2016, the team could determine her needs. The Plaintiff Parents were told that the Independent Educational Evaluation ("IEE") could be requested after that.

6.18    About September 21, 2016, TSBVI completed a home visit with the family in Pearland.

6.19    At a September 22, 2016 meeting, TSBVI reported its observations to HISD, stating S.S. should be determined eligible. They also requested that HISD conduct a complete Assistive Technology evaluation of S.S.

6.20    On October 7, 2016, Defendant HISD's Teacher of the Visually Impaired, Dorothy Vetrano also told Plaintiffs that S.S. would qualify for Vision Services. In October, 2016, Ms. Vetrano also asked Plaintiff Parents to backdate some documents, suggesting that no ARD meeting would be held without doing so.

6.21    In October, 2016, a staff person from HISD, Melvin Marx, Orientation and Mobility Specialist, verbally suggested he would work with S.S. at The Joy School. He never did.

6.22    The Plaintiff Parents attended a January 19, 2017 ARD meeting. Here, the Plaintiff Parents received the October evaluations for the first time; they were told the evaluations were the same as earlier ones but the evaluations had some changes. At the same January 19, 2017 meeting, Defendant HISD again declined to find Plaintiff S.S. eligible for services. Plaintiff Parents disagreed with the evaluations conducted by Defendant HISD (the information about which had been wrongly withheld for months) and asked for an Independent Educational Evaluation ("IEE") to address concerns about her needs.

6.23    In March of 2017, plans for an IEE proceeded. One of the evaluators selected was Emily Gibbs. The Plaintiff Parents did not know Ms. Gibbs was a Pearland ISD Teacher of the Visually Impaired when she began her work in March of 2017.

6.24    Emily Gibbs was actively employed by Pearland ISD as a Teacher of the Visually Impaired when she began her work on the IEE being paid for by Defendant HISD. Gibbs knew that Plaintiffs lived within the PISD;  she even visited the family home in April, 2017. Gibbs did not refer the family for Child Find in Defendant PISD.

6.25    On May 15, 2017, the Plaintiffs re-contacted Defendant PISD asking for assistance. Defendant PISD confirmed the email from January 21, 2016 (requesting help) had been received by Ms. Yancy, but Ms. Yancy had not forwarded the email  on to anyone else at Defendant PISD.

6.26    Not until late May of 2017 did Petitioners receive a Prior Written Notice from Defendant HISD regarding the January 19, 2017 meeting. The May 2017 Prior Written Notice from Defendant HISD indicated that Defendant HISD was finding S.S. ineligible because Plaintiff Parents had asked for an IEE.

6.27    Meanwhile, Defendant PISD delayed any meeting with the Plaintiffs until June 1, 2017.

6.28    On June 1, 2017, Plaintiff Parents met with Defendant PISD. Defendant PISD's Teacher of the Visually Impaired Emily Gibbs was present. Gibbs told the Plaintiffs they would be happy with her Independent Education Evaluation report. She adamantly refused, however, to release the report to the Plaintiff Parents at the meeting contending that the Independent Education Evaluation "belonged" to Defendant HISD. Plaintiff Parents left the meeting without the IEE report and with the understanding that nothing could be done by Defendant PISD until the fall. There was some suggestion that Plaintiff S.S. would need to enroll in Defendant PISD before an IEP could be developed.

6.29    While the Plaintiff Parents were in the process of requesting a due process hearing on June 7, 2017, they received the Gibbs Individual Education Evaluation report recommending that Plaintiff S.S. be deemed IDEA eligible as Visually Impaired (due to her blindness) and receive special education and related services.

6.30    After the due process hearing was requested, Defendant HISD conceded that Plaintiff S.S. is IDEA eligible as a Visually Impaired student, entitled to services as a proportionate share student.

6.31    After the due process hearing was requested, Defendant PISD conceded that Plaintiff S.S. is IDEA eligible as a Visually Impaired student and entitled to special education and related services.

6.32    Until obtaining counsel in late spring of 2017, Plaintiff Parents were unaware of the difference between proportionate share services for IDEA eligible students and a unilateral placement pursuant to the IDEA. Had they known earlier, they would have acted earlier on their rights.

17

6.33    School districts are to provide parents with a Notice of Procedural Safeguards ("Safeguards") to guide them through the IDEA process. TEA publishes the Safeguards for local districts to use. The Safeguards are to be provided when parents start the process. Plaintiff Parents dispute the circumstances as to when or if they received Safeguards. The Safeguards contained confusing  information about which school district to contact for assistance for Plaintiff S.S.

6.34    The Safeguards are confusing. Both the explanation about a Voluntary Private School Placement and Public Reimbursement for Private School indicate that the child must first have to have been receiving special education services from a public school district. Because Plaintiff S.S. was being denied eligibility for special education, Plaintiff Parents did not understand that any of the procedures could apply to them.

6.35    After obtaining counsel in the spring 2017, Plaintiff Parents learned what proportionate share services are, what a unilateral private placement is, and about their rights in general. Thus, Plaintiff Parents filed for a hearing when they knew they could have a hearing, which was after obtaining counsel in spring of 2017; they filed within one year of learning about the statute of limitations, again after obtaining counsel.

### 7. THE HEARING OFFICER'S HISD DECISION- EX. A.

7.1    As is his custom, despite a plethora of evidence, Hearing Officer Bunton issued a very short, scant 5 ½-page Decision. The Hearing Officer held in totality for the Defendant HISD, completely contrary to both the documentary and testimonial evidence produced at the hearing, and the law.

7.2    The Decision includes incorrect, or partially incorrect, findings and is incorrect as a matter of law throughout. The Decision does not meet the statutory and regulatory requirements for a special education decision required by 20 U.S.C. § 1415(f)(3)(A) and (E) and 34 C.F.R. §

300.511(c), which mandate that a hearing officer must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

7.3     The Hearing Officer incorrectly found that Plaintiffs were not entitled to an exception to the Texas one-year statute of limitations.

7.4     The Hearing Officer found that Plaintiff S.S. was initially eligible for special education services in 2009 and January of 2010, but then incorrectly and wholly ignores that eligibility determination throughout the opinion.

7.5     The Hearing Officer incorrectly found that Defendant HISD was first notified about Plaintiff S.S. attending private school in February of 2016.

7.6     The Hearing Officer incorrectly found that after the Plaintiff Parents asked for assistance on January 21, 2016, the Defendant HISD timely and fully evaluated Plaintiff S.S.

7.7     The Hearing Officer ignored and minimized the Defendant HISD's failure to comply with all requisite procedural requirements as to Child Find from January 21, 2016 through the date of the hearing request on June 7, 2017.

7.8     Without any factual basis, the Hearing Officer concluded that Defendant HISD proved Plaintiffs had notice of their right to file timely.

7.9     The Hearing Officer incorrectly determined, contrary to law, that Plaintiffs have no remedy other than an Independent Education Evaluation.

7.10     The Hearing Officer ignored Defendant HISD's failure to comply with IDEA and state law procedural requirements including the faulty Notice of Procedural Safeguards and wrongly asserts that, because one of the parents is an attorney, the Plaintiff Parents should have been aware of certain rights.

7.11     The Hearing Officer wrongly concluded that matters are moot and that no material fact is

at issue.

7.12    The Hearing Officer ignored entirely the Defendant HISD's failure to provide proportionate share services to Plaintiff S.S. from June 2016 through June 2017. That year was clearly within the Texas one year statute of limitations, and Plaintiff S.S. received no proportionate share services because Defendant HISD incorrectly believed she was not eligible.

7.13    The Hearing Officer incorrectly believed that he had no authority to issue equitable relief in the nature of reimbursement for privately obtained evaluations (that Defendant HISD later relied upon), for private school tuition, or for transportation costs.

## 8. THE HEARING OFFICER'S PISD DECISION-EX. C.

8.1    As is his custom, despite a plethora of evidence, Hearing Officer Bunton issued another very short, 11 page Decision. The Hearing Officer held in totality for the Defendant PISD, completely contrary to both the documentary and testimonial evidence produced at the hearing, and the law.

8.2    The Hearing Officer Decision included incorrect, or partially incorrect, factual findings and is incorrect as a matter of law throughout. The Decision does not meet the statutory and regulatory requirements for a special education decision required by 20 U.S.C. § 1415(f)(3)(A) and (E) and 34 C.F.R. § 300.511(c), which mandate that a hearing officer must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

8.3    The Hearing Officer incorrectly found that Plaintiffs were not entitled to an exception to the Texas one-year statute of limitations.

8.4    The Hearing Officer found that Plaintiff S.S. was initially eligible for special education services in 2009 and January of 2010, but then incorrectly and wholly ignored that eligibility

determination throughout the opinion.

8.5     The Hearing Officer incorrectly found that enrollment in the Defendant PISD was necessary in order for Defendant PISD to be responsible for Plaintiff S.S.

8.6     The Hearing Officer conceded that the parents gave notice on January 21, 2016, but excused the Defendant PISD's failure to comply with Child Find by claiming, incorrectly, that Defendant PISD apparently never received the email, despite testimony to the contrary. The Decision also ignored that the Plaintiff Parents contacted the Defendant PISD on May 15, 2017 and were advised that the first date of availability for a meeting was June 1, 2017.

8.7     The Hearing Officer ignored and minimized the Defendant PISD's failure to comply with all requisite procedural requirements as to Child Find from January 21, 2016 through the date of the hearing request on June 7, 2017. He incorrectly suggested that there were two meetings with the family in the spring of 2017, one in May and one on June 1, 2017. This is incorrect. Only one meeting was held, and that meeting was held on June 1, 2017, which was the first date offered by Defendant PISD to meet with the family.

8.8     Without any factual basis, the Hearing officer found that Defendant PISD proved Plaintiffs had timely notice of their rights pursuant to the IDEA.

8.9     The Hearing Officer ignored Defendant HISD's failure to comply with IDEA and state law procedural requirements including the faulty Notice of Procedural Safeguards and wrongly found and incorrectly placed great weight on the fact that, because one of the parents is an attorney, the Plaintiff Parents should have been aware of certain rights.

8.10    The Hearing Officer wrongly concluded that Defendant PISD complied in all respects with the IDEA, despite factual evidence that Defendant PISD qualified Plaintiff S.S. for IDEA eligibility on June 20, 2017 as part of the hearing process, yet had no proposed IEP for Plaintiff

prior to the request for hearing or even before the start of school in the fall of 2017.

8.11    The Hearing Officer erroneously concluded that Defendant PISD's "Child Find" process was sufficient.

8.12.   The Hearing Officer erroneously concluded that Defendant PISD is not responsible to provide any remedy to Plaintiff S.S.

8.13    The Hearing Officer used a faulty legal analysis in the Decision, relying solely and primarily on *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.,* and ignoring or misconstruing the United States Supreme Court's rulings in *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988 (2017) and *Forest Grove v. T.A.*, 557 U.S. 230 (2009).

8.14    The Hearing Officer was completely wrong in finding that Child Find is the responsibility of the Plaintiffs rather than the Defendant PISD when he states that, "The evidence shows, though that the district's ignorance of the presence of a potential student in need of services cannot be justly blamed on the district."  The Hearing Officer also wrongfully excused the District from liability by contending that the Plaintiffs did not enroll the student or seek evaluation until May 2017 (despite the January 21, 2016 email seeking help and the fall 2015 referral from School for Young Children and contact with Ms. Robinson in fall of 2015).

8.15    The Hearing Officer was incorrect in his findings that Plaintiff S.S. and her parents were entitled to absolutely no remedy for Defendant PISD's complete failure to comply with its Child Find duties from January 21, 2016, particularly since Defendant PISD's own Teacher of the Visually Impaired, Emily Gibbs, knew the family lived in the Defendant PISD as of March 2017 and never referred the family through the Child Find system.

8.16    The Hearing Officer was incorrect in finding that an IEP created long after the June 7, 2017 was appropriate for Plaintiff S.S., especially as it did not exist when Plaintiffs filed their

due process hearing in June of 2017.

**9.**

**THE TEXAS EDUCATION AGENCY'S ACTS AND OMISSIONS**

9.1     The Texas Education Agency ("TEA") is responsible to ensure that the State of Texas has a Child Find system that works to identify, locate and evaluate children who are potentially eligible for special education and related services. TEA lacks such a system at least in the Houston ISD and Pearland ISD or both, or alternatively, has a system that failed Plaintiff S.S.

9.2     As of the 2009-2010 school year, Defendant TEA was or should have been aware that Plaintiff S.S. was an eligible IDEA child because she was provided a written Individual Education Plan ("IEP") by the Defendant HISD. A child who has an IEP is counted within the state's "child count" number that is reported to the United States Department of Education in return for funding pursuant to the IDEA.  TEA should also have been aware because Plaintiff S.S. was placed on the Blind Registry at that time.

9.3     As of fall 2015, Defendant TEA, as an agency, should also have been aware of Plaintiff S.S. as a result of the inquiry by the parents to Cecelia Robinson, an employee of Regional Education Service Center No. 4.

9.4     In the fall of 2016, the Houston Chronicle began a series of investigative articles on the TEA's monitoring process for special education which appeared to limit special education services to a "cap" of 8.5%. On October 3, 2016, the United States Department of Education, Office of Special Education Programs ("OSEP"), became aware of the Houston Chronicle series and because of the article series wrote the Texas Education Agency advising that such a cap was contrary to the IDEA.

9.5     As of December, 2016, Defendant TEA was aware of Plaintiff S.S.'s needs as a result of

the December 30, 2016 Houston Chronicle article addressing Child Find issues and prominently featuring Plaintiff S.S. (including a picture) in which Plaintiffs indicate they were seeking special education assistance for her. Defendant TEA took no steps to ensure that Plaintiff S.S. was identified, located, evaluated and provided services.

9.6    Defendant TEA took no steps, at any time, including after receiving the *Letter to Morath*, from the U.S. Department of Education, to reach out to Plaintiffs about their child's needs and to ensure her receipt of special education and related services.

9.7    Defendant TEA is responsible to ensure accurate Notice of Procedural Safeguards and the Safeguards were not accurate from 2009 forward as to private placements and unilateral placements causing confusion to Plaintiffs.

9.8    Unbeknownst to Plaintiffs, Defendant TEA criticized Hearing Officer Wetsch leading to her resignation. This then resulted in the reassignment of the cases to Hearing Officer Bunton.

**10.**

**CAUSE OF ACTION AND CLAIM FOR RELIEF- IDEA AND CHAPTER 89.**

10.1    Plaintiffs repeat and re-allege paragraphs 1 through 9.8 as if more fully set forth herein, in support of their claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., and its related regulations at 34 Code of Federal Regulations Chapter 300, and Texas Chapter 89 which is to ensure implementation of the IDEA in Texas. Plaintiffs bring their IDEA claims as against Defendant HISD, Defendant PISD and Defendant TEA.

**CLAIMS AS AGAINST THE DEFENDANT TEA**

10.2    Plaintiffs assert that they are excused from exhaustion of any administrative remedies as against the TEA because TEA manages the administrative hearing system, selecting and appointing hearing officers, including reassignment of cases.  Thus, a systemic claim of this

24

nature cannot be addressed in the administrative hearing process.

10.3    Plaintiffs assert that the  TEA's establishment of the 8.5% cap in 2004 impeded and/or contributed to the denial of special education and related services to Plaintiff S.S. In 2004, the national average of children in special education was approximately 13.98%; in Texas, in 2004, the average was 11.67%. In 2014, after the cap had been in effect for ten years, the national average percentage of children in special education was 13.50% while in Texas, the average percentage of children in special education had plummeted to  just 8.50%.

10.4    The IDEA requires the Defendant TEA to comply with its Child Find mandate and Defendant TEA has not put in place systems and procedures to ensure Child Find; indeed, the *Letter to Morath* establishes that Defendant TEA was illegally "capping" child find at 8.5%. The Texas State legislature forbade the Defendant TEA from this action. But Plaintiff S.S. remains harmed by the lack of timely Child Find for some seven years. Plaintiffs assert that by Defendant TEA's own acts or omissions, including the 8.5% cap, but not limited to the cap, Defendant TEA violated the Child Find mandate and thus illegally impeded and denied Plaintiff S.S. special education and related services from 2010 through and until 2017, and including significantly impeding parental participation in the process.

10.5    The IDEA, at 20 U.S.C. § 1415(d) and related regulations, requires the Defendant TEA to publish accurate Notice of Procedural Safeguards. The Published Notices of Procedural Safeguards were not accurate. The Safeguards caused harm to Plaintiff S.S. because they were confusing as to private and unilateral placements in the face of Plaintiff S.S.'s illegal exclusion from special education services as a proportionate share student and/or regular resident.

10.6    The IDEA requires the Defendant TEA to have a fair special education due process hearing system which is consistent with the IDEA at 20 U.S.C. § 1415 and related regulations,

and including assignment of hearing officers. Defendant TEA lacked such a system, at least as to HISD and PISD which denied Plaintiff S.S. a timely and fair hearing consistent with the IDEA and fundamental due process.

**CLAIMS AS AGAINST DEFENDANT HISD**

10.7   The IDEA requires the Defendant HISD to comply with its Child Find mandate and Defendant HISD failed to do so. The Hearing Officer's Decision is incorrect and should be reversed. Nothing in the IDEA precludes a hearing officer, or this Court from considering and ordering a complete remedy, including equitable relief to Plaintiffs, for Defendant HISD's failure to comply with its Child Find mandate, which led to a complete denial of proportionate share services to Plaintiff S.S. from June 2014 through and until after the June 2017 hearing request.

10.8   The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation, to find that the Defendant HISD complied with the IDEA, despite Defendant HISD's failure to identify Plaintiff S.S. as a child eligible for special education as a proportionate share child from June 2014 until its concession of Plaintiff S.S.'s eligibility after the Plaintiffs requested a hearing in June of 2017. As is his custom, the Hearing Officer also erred by blaming the Plaintiff Parents for Plaintiff S.S.'s lack of identification as a child with a disability, incorrectly foisting upon the Plaintiff Parents the responsibility for Child Find, which was the Defendant HISD's duty.

**CLAIMS AS AGAINST DEFENDANT PISD**

10.9   The IDEA requires the Defendant PISD to comply with its Child Find mandate and Defendant PISD failed to do so from June 14, 2014 through, and until after, the resolution session of August, 2017. The Hearing Officer's PISD Decision is incorrect and should be reversed. Nothing in the IDEA precludes a hearing officer, or this Court from considering and ordering a

complete remedy, including equitable relief to Plaintiffs, for Defendant PISD's failure to comply with its Child Find mandate, which led to a complete denial special education services to Plaintiff S.S. from June 2014 through and until after the June 2017 hearing request.

10.10   The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation, to find that the Defendant PISD complied with the IDEA despite PISD not identifying Plaintiff S.S. as a child eligible for special education from June 2014 until its concession of Plaintiff S.S.'s eligibility after the Plaintiffs requested a hearing in June of 2017.

10.11   As is his custom, the Hearing Officer also erred by blaming the Plaintiff Parents for Plaintiff S.S.'s lack of identification as a child with a disability, incorrectly foisting upon the Plaintiff Parents the responsibility for Child Find, which Defendant PISD concedes was its duty.

10.12   The IDEA requires the Defendant PISD to ensure that the IEP process includes meaningful participation of parents. Plaintiffs were denied meaningful participation because Defendant PISD refused to carefully and fully consider placement or continued placement, in whole or in part, at The Joy School in any legally constituted IEP meeting.  Instead, Defendant PISD predetermined that Plaintiff S.S. would need to be abruptly moved from The Joy School to a Defendant PISD school without any careful and fair transition that would meet her unique needs.

## 11. PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court receive all of the records of both administrative proceedings, as required by the IDEA, incorporating all of the facts and circumstances set forth above. Plaintiffs request that the Court accept jurisdiction and enter judgment against all Defendants, and grant the following relief:

(1) enter a judgment reversing and vacating the Hearing Officer's HISD Decision and finding that the Defendant HISD denied Plaintiff S.S. a free appropriate public education for its failure to comply with its Child Find duty;

(2) enter a judgment reversing and vacating the Hearing Officer's PISD Decision and finding that the Defendant PISD denied Plaintiff S.S. a free appropriate public education for its failure to comply with its Child Find duty;

(3) set the matter for trial as against the Defendant TEA and or enter a judgment finding that the Defendant TEA's failure to have in place a Child Find system that could be responsive to an obviously legally-blind child, to ensure her timely identification, location, and evaluation for IDEA services, establishes that TEA is in violation of the IDEA as to Plaintiff S.S. within the geographical boundaries of HISD and the PISD;

(4)  order that the Defendant HISD, Defendant PISD and Defendant TEA, each or in some combination thereof and without duplication, reimburse the Plaintiff Parents for evaluations of Plaintiff S.S. they procured and paid for, and upon which Defendant HISD and Defendant PISD relied on to eventually determine Plaintiff S.S.'s eligibility for special education;

(5) order that the Defendant HISD, Defendant PISD, and Defendant TEA, each or in some combination thereof and without duplication, reimburse the Plaintiff Parents for the tuition costs, and transportation costs for private schools they procured for Plaintiff S.S. during the time the Defendant HISD, Defendant PISD, and Defendant TEA each failed their Child Find duties and refused to find S.S. eligible for special education and related services, as either a resident student or a proportionate share student, and with respect to Defendant TEA as a student once deemed eligible

(6) Defendant PISD and Defendant TEA to improve  Child Find policies and practices to ensure that when a student has been previously identified in the HISD as a child eligible for special education, the child is treated as eligible during any review of such eligibility, if the student becomes a proportionate share student;

(7) order that the Defendant HISD, Defendant PISD, and Defendant TEA immediately commence a training program for its staff in requisite procedures, including Child Find for proportionate share students, unilateral placement procedures, and Prior Written Notice;

(8) award Plaintiffs reasonable attorneys' fees and related costs, incurred in the administrative proceedings;

(9) award Plaintiffs reasonable additional attorney fees and costs incurred in pursuing the current action;

(10)    award Plaintiffs prejudgment and post-judgment interest on any and all awards of fees and permissible costs, and

(11)    such other and further relief to which Plaintiffs are entitled.

Respectfully submitted this January 3, 2018:


By:    /s/ *Sonja D. Kerr*
       Sonja D. Kerr, Attorney-in-Charge
       State Bar No. 24095771
       Southern District Bar No. 2952271
       Email: skerr@cuddylawfirm.com
       Cuddy Law Firm, PLLC
       8723 Shoal Creek Blvd
       Suite 100, Austin, Texas, 78757
       Telephone: (512) 649-3191
       Fax: (512) 649-1217

       ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and served upon counsel for Defendant, as indicated below and also served same through U.S. Mail, Certified Mail Return Receipt Requested:

Amy C. Tucker
Counsel for Defendant HISD
Email:  atucker@rmgllp.com
ROGERS, MORRIS & GROVER, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone: (713) 960-6000
Facsimile:  (713) 960-6025

Merri Schneider-Vogel
Counsel for Defendant PISD
Email: msv@thompsonhorton.com
Thompson and Horton
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027-7554
Telephone: (713)-554-6749
Facsimile: (713)-583-9709

In addition, service will be made upon:

Texas Education Agency
Counsel-Legal Services Office
1701 N. Congress Ave.
Austin, Texas 78701

<div align="center" style="text-align:right">

_s/Sonja D. Kerr____
Sonja D. Kerr
Counsel for Plaintiffs

</div>