United States District Court
Southern District of Texas
**ENTERED**
March 09, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEATHER B. and NOZAR NICK S., | § | |
| Parents and Guardians and Next Friends of | § | |
| S.S., a Minor with Disabilities, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-3579 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT, PEARLAND INDEPENDENT | § | |
| SCHOOL DISTRICT, and TEXAS | § | |
| EDUCATION AGENCY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

The pending motions in this case have been referred to the undersigned Magistrate Judge for a Memorandum and Recommendation. Those pending motions are: Plaintiffs' Motion for Partial Summary Judgment against Defendant Pearland Independent School District (Document No. 117), Plaintiffs' Motion for Partial Summary Judgment against Texas Education Agency (Document No. 120), Pearland Independent School District's Motion for Summary Judgment (Document No. 124) and Defendant Texas Education Agency's Motion for Summary Judgment (Document No. 129). Having considered the motions, the responses and additional briefing, the administrative record[1] and the additional evidence submitted by Plaintiffs,[2] and the applicable law, the Magistrate Judge

---

[1] The Administrative Record, filed as Document No. 18, is referred to herein as "AR" with a corresponding page number.

[2] Plaintiffs' two Motions to Accept Additional Evidence in Support of their Motions for Partial Summary Judgment against Pearland Independent School District and Texas Education Agency (Document Nos. 118 and 121) are both GRANTED. Much of what Plaintiffs have offered as "additional evidence" is "additional" within the meaning of the *Town of Burlington* standard. *See E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 762 (5th Cir. 2018)

RECOMMENDS, for the reasons set forth below, that the Motions for Summary Judgment by Pearland Independent School District and Texas Education Agency be GRANTED and Plaintiffs' Motions for Partial Summary Judgment be DENIED.

## I.      Background

This is a Individuals with Disabilities Education Improvement Act ("IDEA") case brought by the parents of S.S., who is visually impaired, and who, Plaintiffs allege, was not timely identified by Defendants Houston Independent School District ("HISD") and Pearland Independent School District ("Pearland ISD") as needing special education and related services.  Plaintiffs also allege that Defendant Texas Education Agency ("TEA") does not have a viable system or method for identifying children needing special education and related services, and that it discouraged school districts from finding and identifying children needing special education and related services by virtue of a recommended 8.5% cap on the number of such children as a percentage of the school district's student population.

In Plaintiffs' Second Amended Complaint, Plaintiffs alleged that TEA: (1) violated the "Child Find" provisions in the IDEA by failing to develop and implement a "practical method" for determining "which children with disabilities are currently receiving needed special education and related services, including child find for children in private schools;" (2) failed to publish accurate Notices of Procedural Safeguards;" (3) failed to provide a fair special education due process hearing

---

(adopting standard for admission of additional evidence in IDEA case set forth in *Town of Burlington v. Dep't of Educ. for Mass.*, 736 F.2d 773, 790-91 (1st Cir. 1984)).  Moreover, none of the statements in the affidavits Defendant Texas Education Agency has objected to, and none of the exhibits submitted as additional evidence, have any bearing on the ultimate, substantive determinations made herein on Plaintiffs' claims.

system; and (4) failed to provide S.S. with needed special education and related services when such services were not provided by the local educational agencies. With respect to Defendant Houston Independent School District ("HISD"), Plaintiffs alleged that the administrative hearing officer incorrectly determined that HISD did not violate the Child Find provisions as they related to S.S. from June 2014 through June 2017. Finally, with respect to Pearland Independent School District ("Pearland ISD"), Plaintiffs also allege that the administrative hearing officer incorrectly determined that Pearland ISD did not violate the Child Find provisions as they related to S.S. from June 14, 2014, through August 2017.

In an Order entered on September 30, 2019, the Court dismissed Plaintiffs' claims against HISD (Document No. 108). The contents of that Order serve as a guide for the analysis of Plaintiffs' claims against Pearland ISD and TEA. As a preface to a discussion of those claims, the following factual background information, in chronological order, is needed to provide context:

> S.S. was born prematurely in 2007. SS has a visual impairment that she has had since birth.
>
> Up until June 14, 2014, S.S. and her parents lived within the geographical boundaries of HISD.
>
> For the 2009-2010 school year, HISD developed an individual education plan (IEP) for SS that allowed her to attend a preschool for children with disabilities within HISD. That IEP was based on S.S.'s visual impairment.
>
> During the spring of 2010, Plaintiffs withdrew SS from that HISD preschool program.
>
> Between 2010 and 2012, S.S. attended, at Plaintiffs' expense, the School for Young Children, a private school within the within geographic boundaries of HISD. She also attended the School for Young Children during the 2012-2013 school year, for kindergarten; and the 2013-2014 school year, for first grade.
>
> On or about June 14, 2014, S.S. moved with Plaintiffs to a residence within the geographic boundaries of Pearland ISD. At the time of the move, S.S. was still

attending the School for Young Children in Houston.  She continued to attend the School for Young Children in Houston during the 2014-2015 school year for second grade, and the 2015-2016 school year for third grade.

In July 2015, Plaintiffs had S.S. evaluated at the Perkins School for the Blind in Massachusetts.  That evaluation led Plaintiffs to contact the Texas School for the Blind and Visually Impaired in Austin.

In November 2015, Plaintiffs sought information from TEA about the availability of special education and related services.  In January 2016, in response, Plaintiffs were advised to contact both HISD and Pearland ISD.

In January 2016, SS was evaluated by Dr. Valerie Van Horn Kerne at Plaintiffs' behest.  In a report dated, January 21, 2016, Dr. Kerne stated that SS would "strongly benefit from a supportive academic setting in which visual impairment services are available to support her academic skill development. . . . Should she enroll in public school, an Individualized Education Plan (IEP) should be considered by her educational team as the appropriate strategy for providing services/supports needed given [her] medical history, visual impairment, and neurocognitive weaknesses (i.e., fine-motor skills deficits)."

On January 21, 2016 Plaintiffs sent emails to both HISD and Pearland ISD.  The content of those two emails is as follows:

> Dear Dr. Terry and Ms. Yancy: Good morning.  We received your contact information from Cecilia Robinson (Region 4 Education Service Center).  We have a 9 year old daughter, S. that is low vision (legally blind, limited peripheral vision, nystagmus).  She attends a private school in Houston, but we live in Pearland.  We are interested in having her receive vision services, but do not know how to go about doing so and which school district would be able to help.  We had S. evaluated at the New England Low Vision Clinic (Perkins) this past summer and they highly recommend an O&M evaluation and vision aid for the classroom.  If either or both of you could advise us how to move forward we would greatly appreciate your assistance.

Plaintiffs did not receive a response to the January 21, 2016, email from Pearland ISD.  HISD responded to the email, and Plaintiffs pursued their requests for special education and related services with HISD throughout 2016, and into 2017.

In May 2016 HISD completed its evaluation of S.S.

On June 7, 2016, in connection with an admission, review and dismissal ("ARD") meeting with HISD, Plaintiffs were advised of HISD's determination that SS was not

eligible for special education or related services, whether she attended a private school or a public school.

In the fall of 2016, S.S. began to attend the Joy School (a private school) in Houston, at Plaintiff's expense.

On September 22, 2016, the Texas School for the Blind and Visually Impaired ("TSBVI") advised HISD, from its evaluation of SS, that SS should be considered eligible for special education and related services under the IDEA.

In the Fall of 2016, the Houston Chronicle published a series of articles about TEA's recommended 8.5% cap on special education and related services. S.S. was featured in an article dated December 30, 2016, which noted that HISD had determined that SS was not eligible for special education and related services despite being legally blind.

On January 19, 2017, Plaintiffs attended an ARD meeting with HISD. At that ARD meeting, HISD reiterated that SS was not eligible for services. Plaintiffs responded by asking HISD for an independent educational evaluation (IEE).

Between March and April 2017, an IEE was done for HISD by Emily Gibbs, a teacher of the visually impaired at Pearland ISD.

On May 15, 2017, Plaintiffs, upon the advice of their attorneys, re-contacted Pearland ISD by email. That email stated, in pertinent part:

> As you know, we are residents of Pearland ISD. Our daughter [ ] is legally blind and needs special education and related services. She also had Chronic Lung Disease.
> We wrote to Pearland ISD on January 21, 2016 (email attached). At that time we did not understand that Pearland, as our resident district, could be responsible to provide special education and related services for [SS]. No one contacted us back from Pearland ISD at that time. We want you to know that we are only having [SS] attend private school because while we were residents of HISD, we didn't think she was getting and appropriate program and that is what led us into private school. Since then, [SS] has continued to attend private school and everyone told us that HISD was responsible for her because her private school was located in Houston. But, if she could receive what she needed in a public school, of course, we would be willing to have her in public school.

Pam Wilson, Executive Director of Special Education at Pearland ISD, promptly responded to the May 15, 2017, email, acknowledged that the email to Ms. Yancy

from the year before had been received but had not been forwarded it to anyone at Pearland ISD, and had not been seen by her until May 15, 2017.

In Emily Gibbs' IEE, dated May 30, 2017, she found that SS was eligible for special education and related services.

On June 1, 2017, Pearland ISD met with Plaintiffs. Emily Gibbs was at that meeting and she advised Plaintiffs that the IEE she had done for HISD was favorable, but she did not provide them with a copy of the written evaluation.

On June 7, 2017 Plaintiffs requested a due process hearing to challenge HISD's determination that SS was not IDEA eligible.

On June 7, 2017, Plaintiffs also requested a special education due process hearing to complain about Pearland ISD's failure to timely identify and evaluate SS for special education and related services. *Pearland ISD S.S. B/N/F H.B. and N.S. v. Pearland Independent School District*, Dkt. No. 249-SE-0617.

On June 20, 2017, Pearland ISD agreed and conceded that SS was a student with a visual impairment entitled to special education and related services under the IDEA.

On August 11, 2017, prior to the commencement of the 2017-2018 school year, an ARD meeting was held between Pearland ISD and Plaintiffs. The meeting was reconvened on August 18, 2017. An IEP was completed on September 27, 2017. No agreement was reached between Pearland ISD and Plaintiffs about the services to be made available to SS. While the IEP offered to Plaintiffs was for placement for SS at Jamison Middle School in Pearland ISD, Plaintiffs declined that offer and continued SS at the Joy School in Houston.

Between October 10 and October 11, 2017, a due process hearing was held in the Pearland ISD case. On December 8, 2017, the hearing officer, Lucius Bunton, concluded that Pearland ISD had not violated its IDEA Child Find obligations.

This case was filed on November 21, 2017, against HISD. In a Second Amended Complaint filed on January 3, 2018, claims against Pearland ISD and TEA were added.

In December 2018, while this case was pending, SS and her family moved to Massachusetts.

On September 30, 2019, the Court granted HISD's Motion for Summary Judgment, and dismissed all of Plaintiffs' claims against HISD.

## II.      Standard of Review

The parties in this case have filed cross Motions for Summary Judgment (Document Nos. 117, 120, 124 and 129).  IDEA cases such as this may be decided upon summary judgment.  *J. L. v. Clear Creek Indep. Sch. Dist.*, No. CV H-15-1373, 2016 WL 4704919, at *22 (S.D. Tex. Aug. 16, 2016) ("An IDEA case may be adjudicated on motion for summary judgment."), *report and recommendation adopted sub nom. L. v. Clear Creek Indep. Sch. Dist.*, No. CV H-15-1373, 2016 WL 4702446 (S.D. Tex. Sept. 7, 2016), *aff'd sub nom. D. L. by & through J.L. v. Clear Creek Indep. Sch. Dist.*, 695 F. App'x 733 (5th Cir. 2017), *as revised* (July 31, 2017).  In so doing, a federal district court reviews the decision of a hearing officer "virtually de novo." *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003).   That means, in a summary judgment context, that the court receives the "state administrative record" and "additional evidence at the request of either party," and affords the hearing officer's findings "due weight," while arriving at "an independent conclusion based on a preponderance of the evidence." *Id.*   Unlike in a traditional summary judgment context, "the existence of a disputed material fact will not defeat a motion for judgment on an IDEA claim," and it is the plaintiff who bears a burden of "persuasion." *T.W. by K.J. v. Leander Indep. Sch. Dist.*, No. AU-17-CA-00627-SS, 2019 WL 1102380, at *2 (W.D. Tex. Mar. 7, 2019).  Therefore, in an IDEA case such as this, "summary judgment 'is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately

addressed.' " *Seth B. ex rel. Donald B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016) (quoting *Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996)).

### III.     IDEA

The IDEA applies to states, and the school districts within them, that receive federal funding. The IDEA requires that children with disabilities be provided with an education "to the maximum extent appropriate with children who are not disabled," in an environment that is the "least restrictive [ ] consistent with their needs." *William V. v. Copperas Cove Indep. Sch. Dist.*, No. 617CV00201ADAJCM, 2019 WL 5394020, at *3 (W.D. Tex. Oct. 22, 2019), *aff'd sub nom. William V. as next friend of W.V. v. Copperas Cove Indep. Sch. Dist.*, 826 F. App'x 374 (5th Cir. 2020).  The State of Texas accepts federal education funding; as a consequence "all school districts within its borders must comply with the IDEA." *Id.*

As is relevant to the claims asserted in this case, the IDEA contains a "Child Find" provision, which requires that "[a]ll children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."  20 U.S.C.A. § 1412(a)(3)(A).  The Child Find obligations in the IDEA arise when a school district "has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *El Paso*

*Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. 918, 950 (W.D. Tex. 2008). "Once the suspicions arise, the school district 'must evaluate the student within a reasonable time after school officials have notice of behavior likely to indicate a disability.'" *Id.* (quoting *Strock v. Indep. Sch. Dist. No. 281*, No. 06–CV–3314, 2008 WL 782346, at *7 (D.Minn. Mar. 21, 2008)).   These Child Find obligations apply regardless of whether a student is currently attending a public school, is attending a private school, or is home-schooled.  20 U.S.C. § 1412(a)(3)(A); *Bellflower Unified Sch. Dist. v. Lua*, 832 F. App'x 493, 495–96 (9th Cir. 2020) ("The Department of Education's regulations implementing the IDEA specifically contemplate that, upon a parent's request, a school district must evaluate a child residing in its district for purposes of making a FAPE available to her, even if she is enrolled in a private school in another district.").

A two part inquiry is generally undertaken to determine whether a school district has met its Child Find obligations.  "First, the Court must examine whether the local educational agency had reason to suspect that a student had a disability, and whether that agency had reason to suspect that special education services might be needed to address that disability. Next, the Court must determine if the local educational agency evaluated the student within a reasonable time after having notice of the behavior likely to indicate a disability."  *A.L. v. Alamo Heights Indep. Sch. Dist.*, No. SA-16-CV-00307-RCL, 2018 WL 4955220, at *6–7 (W.D. Tex. Oct. 12, 2018).

There are three elements to a Child Find violation claim: (1) whether a school district had notice of a likely disability; (2) whether and when a school district satisfied its Child Find obligations; and (3) the reasonableness of any delay between the date a school district had notice of a likely disability and the date the school district satisfied its Child Find obligations.  *Spring Branch Indep. Sch. Dist. v. O.W.*, 961 F.3d 781, 793 (5th Cir. 2020) ("A finding of a child find

violation turns on three inquiries: (1) the date the child find requirement triggered due to notice of a likely disability; (2) the date the child find duty was ultimately satisfied; and (3) the reasonableness of the delay between these two dates."), *cert. denied*, 2021 WL 666472 (Feb. 22, 2021).  Beyond these three considerations, a plaintiff alleging a Child Find violation must prove that the violation resulted in a denial of a student's educational opportunities, a deprivation of a student's educational benefits, or a deprivation of a parent's participation rights.  *D.H.H. by & Through Rob Anna H. v. Kirbyville Consol. Indep. Sch. Dist.*, No. 1:18-CV-00120-MAC, 2019 WL 5390125, at *11 (E.D. Tex. July 12, 2019), *report and recommendation adopted sub nom. D.H.H. by Rob Anna H. v. Kirbyville Consol. Indep. Sch. Dist.*, No. 1:18-CV-00120-MAC, 2019 WL 4052200 (E.D. Tex. Aug. 27, 2019); *T.C. ex rel. Student v. Lewisville Indep. Sch. Dist.*, No. 4:13-CV-186, 2016 WL 705930, at *13 (E.D. Tex. Feb. 23, 2016) (quoting *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3rd Cir. 2010)) ("[A] procedural child-find violation is 'actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.")).

A hearing officer's decision on an alleged Child Find violation is subject to review in this Court pursuant to 20 U.S.C. § 1415(e)(2) ("The Court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of the party, and, basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate").  As set forth above, a review of the hearing officer's decision is virtually *de novo*.

With respect to the "Child Find" and related claims against TEA, because the TEA was not a party to the due process proceedings against Pearland ISD and HISD, Plaintiffs' claims against TEA are not directly the subject of the hearing officer's decisions.  However, Plaintiffs' claims

against TEA are derivative of the claims asserted by Plaintiffs against both HISD and Pearland ISD because the claims against TEA are premised on a denial of IDEA services and a violation of the Child Find obligations.  Therefore, while the hearing officer made no findings relative to TEA because it was not (and could not have been) a party to the due process proceedings, the findings that were made by the hearing officer relative to both HISD and Pearland ISD affect the viability of Plaintiffs' claims against TEA.

**IV.     Discussion – Claims against Pearland ISD**

Plaintiffs allege in this case that Pearland ISD violated its Child Find obligations under the IDEA between January 21, 2016, when they first made an email inquiry of Pearland ISD about special education and related services, through June 20, 2017, when Pearland ISD acknowledged that SS was eligible for services under the IDEA.[3]  Plaintiffs also maintain that the hearing officer's decision to the contrary is incorrect and unsupported by the evidence.  Pearland ISD responds that the record evidence supports the hearing officer's determination that it did not violate the Child Find provisions in the IDEA, and that the IEP formulated for SS on September 27, 2017, was appropriate and provided SS with a Free Appropriate Public Education (FAPE).[4]

---

[3] Plaintiffs also allege that Pearland ISD's Child Find violation dates to June 2014, when they moved into the District.  As set forth herein, imposing that date as the date Pearland ISD was on notice of SS's likely disability is both unsupported by the evidence and objectively unreasonable.

[4] Pearland ISD also argues that any claim related to any time before June 7, 2016, is, as also found by the hearing officer, barred by the one year statute of limitations.  While this limitations argument has merit, the evidence in the record establishes by more than a preponderance of the evidence that Pearland ISD did not, at any time, violate the Child Find provisions in the IDEA, nor did it fail to properly and timely evaluate SS and offer appropriate services for her visual impairment.

There is no dispute in the evidence that: Plaintiffs moved to a residence within Pearland ISD on June 14, 2014; Plaintiffs sent Pearland ISD an email inquiry about IDEA services for SS on January 21, 2016; Pearland ISD did not respond to the January 21, 2016, email inquiry; a Pearland ISD employee, Emily Gibbs, evaluated SS for HISD in March-April 2017, and concluded in a report dated May 30, 2017, that SS was eligible for services; and SS was featured in a Houston Chronicle article dated December 30, 2016, about HISD's denial of her requests for special education and related services.  Those facts relate to the notice element and, in particular, when Pearland ISD had notice of a likely disability.  Those facts, however, only support a conclusion that Pearland ISD had notice of SS's likely disability in April, 2017, when Emily Gibbs learned from discussions with Plaintiffs that SS lived within Pearland ISD.

First, it cannot be said that Pearland ISD had notice of SS's likely disability in June 2014, when the family moved to a residence within Pearland ISD.  Plaintiffs did not present any evidence to the hearing officer, and there is nothing in any additional evidence, that would have sufficed as notice to Pearland ISD of SS's presence in the district or SS's likely disability in June 2014. Plaintiffs' argument that Pearland ISD should have done something to determine that SS lived within Pearland ISD after June 14, 2014, places an unreasonable and impossible burden on the District to know, at all times, the identity and location of all students within the District.  While the wording of the Child Find provision in the IDEA may suggest that there is such a burden, no Court has held that the burden is as high as that argued for by Plaintiffs in this case.  *See e.g., P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009) (upholding District Court's determination that the District's Child Find efforts, which included posting of Child Find notices in local newspapers and on the District's website, sending information in residents' tax bills, and

placing posters and pamphlets in private schools, were appropriate and sufficient).[5] Plaintiffs' move

to Pearland ISD in June 2014 does not, in and of itself, suffice as notice to Pearland ISD of SS's

likely disability.

Second, while the January 2016 email from Plaintiffs to Ms. Yancy at Pearland ISD can be

seen as some "notice" of SS's presence in the district and her likely disability, it was not effective

or reasonable notice given the evidence at the hearing on October 10-11, 2017, that Ms. Yancy

resigned from Pearland ISD in 2016, the January 21, 2016, email was not forwarded by her to

anyone prior to her resignation, and Pearland ISD only discovered the existence of the January 2016

---

[5] The record evidence is undisputed that Pearland ISD had information on its website about both Child Find and special education and related services in the District.  Pam Wilson, the Executive Director of Special Education at Pearland ISD explained at the hearing, as follows, Pearland ISD's Child Find efforts:

> So we have information on the web page.  We have flyers there, information there about who to contact, which would be myself.  We put notifications in the local newspapers.  We provide a lot of parent training.  Every year we would have trainings here and at different schools that's open to the public, where parents can attend, and we'll do call-outs and put information on the website.  We post those advertisements on Facebook too.  We do a disabilities fair.  We collaborate with several surrounding school districts.  And we do sessions for parents, or anybody really wanting to attend.  And vendors come, advocates, and people that provide resources to parents.  And again, that's advertised.  We meet with our private schools in our district and we talk about the process for evaluating students.  If they have students there that need evaluation, we give them the contact list of our LSSPs and speech pathologists.  We have staff members that volunteer in the community.  I know some of our speech pathologists volunteer at the local day cares to do screenings.  Dr. Brandon is our district psychologist, and he is on the board of CRCG, the Community Resource Coordination Group.  And so he works with different agencies.  If they know of families that need help, then he's aware of that.

AR 1728-1729.  The efforts undertaken by Pearland ISD were at least as expansive as that found by the Third Circuit to be appropriate in *P.P.*

email when it was attached by Plaintiffs to a subsequent email dated May 15, 2017.[6]  That single email from January 2016, with no follow-up of any kind by Plaintiffs for more than a year, cannot be seen as effective notice to Pearland ISD of SS's likely disability in January 2016.

Third, the Houston Chronicle article, dated December 30, 2016, did not provide Pearland ISD with notice that SS was living in Pearland ISD and was likely eligible for services from Pearland ISD.  All the Houston Chronicle article mentioned were the struggles SS was having seeking IDEA services from HISD; nowhere is her residence in Pearland or Pearland ISD mentioned.[7]

Fourth and finally, the contact between Emily Gibbs and Plaintiffs in March-April 2017 in connection with the IEE Gibbs did for HISD should, and does, suffice as notice to Pearland ISD that SS was likely eligible for services from Pearland ISD.  Emily Gibbs, while completing an IEE for HISD, was a teacher for the visually impaired at Pearland ISD.  In connection with the IEE, she became aware in April 2017 that SS lived within the geographic boundaries of Pearland ISD.  She concluded in her IEE report for HISD that SS was visually impaired and eligible for IDEA services. As such, because Emily Gibbs was a teacher for the visually impaired at Pearland ISD and knew in April 2017 that SS lived within Pearland ISD and was likely disabled, and as testified to by Pam

---

[6] The hearing officer's determination that there was no evidence that anyone at Pearland ISD received the January 21, 2016, email is supported by the record.  While Plaintiffs argue that Pearland ISD should have had some method for ensuring that emails were not lost, Plaintiffs admit that they did not send a follow-up email for over year, did not look at Pearland ISD's website to determine who to email about a request for services, and made a conscious decision to pursue services from HISD.

[7] Plaintiffs' complaints about the hearing officer's exclusion of the Houston Chronicle article are meritless.  Because the article did not connect SS to Pearland or Pearland ISD, it had no relevance to the issue of when Pearland ISD had notice of SS's likely disability and her eligibility for services in Pearland ISD.

Wilson, Gibbs had Child Find obligations, *see* AR 1767-68, Pearland ISD had notice of SS's likely disability in April 2017.

That notice date does not end the inquiry.  Next to be considered is when Pearland ISD fulfilled its Child Find obligations, and whether the delay between its notice and its fulfillment of its Child Find obligations was reasonable.  "[T]he reasonableness of a delay is not defined by its length but by the steps taken by the district during the relevant period. A delay is reasonable when, throughout the period between notice and referral, a district takes proactive steps to comply with its child find duty to identify, locate, and evaluate students with disabilities. Conversely, a time period is unreasonable when the district fails to take proactive steps throughout the period or ceases to take such steps." *O.W.*, 961 F.3d at 793.

Here, the record evidence shows that Pearland ISD fulfilled its Child Find obligations as early as May 16, 2017, when Pam Wilson, Executive Director of Special Education at Pearland ISD, responded to Plaintiffs' May 15, 2017, email and began the identification and evaluation process, or as late as June 20, 2017, after an informal meeting was held with Plaintiffs on June 1, 2017, and Pearland ISD informed Plaintiffs on June 20, 2017, that SS was eligible for IDEA services.  Using either date, the delay between Pearland's notice of SS's likely disability and Pearland ISD's acknowledgment of SS's eligibility, was a period of approximately two months.  That two month delay came towards the end of the academic school year, at a time when any earlier evaluation of SS would not, and could not, have resulted in any lost educational opportunities or benefits for SS during the 2016-2017 school year.  That delay was, therefore, not unreasonable and did not result in any injury to SS.

As for the delay in developing an IEP for SS at Pearland ISD, the record evidence shows that

the September 27, 2017, IEP was completed within a reasonable time, even if it was completed after the start of the 2017-2018 school year. The record evidence shows that Plaintiffs did not sign the required consents for Pearland ISD to obtain information about SS from both the Joy School and TSBVI until July 31, 2017, even though the consents were provided to Plaintiffs on June 20, 2017, *see* AR 1742; no one from the Joy School was available to participate in an ARD until after August 22, 2017, *see* AR 1745; and the effects of Hurricane Harvey resulted in school closures throughout the Houston and Pearland area in late August, early September 2017.[8] In addition, that IEP was, based on the evidence in the record, appropriate to meet the needs of SS at Pearland ISD. Plaintiffs' expert, Michael Munro testified, in accord with his expert report, that the IEP was both fair and appropriate. AR 1048-1054; 1969-1983. Dr. Rona Pogrund, Pearland ISD's expert, testified that the IEP was appropriate for SS, and that many of the services contained in the IEP could not be provided by the Joy School. AR 2354-55; 2358. While Michael Munro expressed concerns about SS's transition from private school to public school, *see* AR 1952-1954, the IEP contained mechanisms and strategies for minimizing the disruption of such a transition for SS, and Dr. Pogrund testified that Jamison Middle School, was very linear, and that delaying SS's transition to public school would not, in the long run, be in SS's best interests. AR 2350, 2352-53. Dr. Pogrund

---

[8] Ideally, the IEP should have been ready the first day of the 2017-2018 school year, as provided for by 34 C.F.R. § 300.323 ("At the beginning of each school year, each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP, as defined in § 300.320"). The 2017-2018 school year, particularly the beginning of it, with the landing of Hurricane Harvey in Houston on August 26-28, 2017, was a school year like none other. The school closures occasioned by Hurricane Harvey damage, coupled with the unavailability of anyone from the Joy School until late August 2017, after the beginning of the school year, are two circumstances that were out of Pearland ISD's control. In addition, the fact that the IEP was being discussed in August, as opposed to earlier in the summer, was the result of Plaintiffs' failure to sign the consents needed by Pearland ISD to obtain information about SS.

also testified that Pearland ISD, in the fall of 2017, had "a whole team of people and specialists and administrators who seem[ed] more than willing to bend over backwards to meet [SS's] needs and accommodate whatever it [was] that she [needed]." AR 2348.

Upon this record, under the virtually *de novo* standard of review, Pearland ISD did not violate its Child Find obligations and did not deny SS a Free Appropriate Public Education (FAPE). As for Plaintiffs complaints about the hearing officers' decision, none of the procedural complaints resulted in an unfair proceeding or a denial of due process at that proceeding. The hearing officer did not misconstrue or mis-characterize Michael Munro's testimony. Munro *did* testify that the September 27, 2017, IEP was fair and appropriate for SS's needs. While Munro also stated that more of a plan was needed for SS's transition to public school, he did not find any significant fault with the elements of the September 27, 2017, IEP. As for the hearing officer's exclusion from the hearing of the Houston Chronicle article mentioning SS and her visual impairment and Plaintiff Heather B.'s affidavit, neither evidentiary exclusion resulted in a denial of a fair hearing. As set forth above, the Houston Chronicle article had no relevance as to when Pearland ISD knew SS lived within the District because nothing in that article stated that SS lived in Pearland/Pearland ISD. The exclusion of Plaintiff Heather B.'s affidavit was appropriate given that she testified at the hearing. Finally, Plaintiff's complaints about the change in hearing officers, and the break taken during Dr. Pogrund's testimony in violation of the sequestration order, have not been shown by Plaintiffs to have had any effect on the result of the proceeding.

With regard to Plaintiffs' complaints about the hearing officer's findings, the hearing officer's decision on the Child Find claim focused on the following facts: (1) Plaintiffs did not seek to enroll SS in Pearland ISD; (2) there was no evidence that the January 2016 email to Ms. Yancy

was received or read by anyone at Pearland ISD; and (3) Plaintiffs decided, in 2016, not to pursue services with Pearland ISD and instead decided to seek services from HISD.  None of those findings are incorrect.  Plaintiffs did not enroll SS in Pearland ISD; there was no evidence that anyone at Pearland ISD read the January 2016 email addressed to Ms. Yancy; and Plaintiffs testified at the hearing that a conscious decision was made in early 2016 to pursue services via HISD.  Those factual findings might not cohesively support the hearing officer's conclusion that Pearland ISD met its Child Find obligations, the other record evidence, set forth above, supports that conclusion.

In all, the record evidence presented to the hearing officer, as well as the additional evidence submitted by Plaintiffs herein, supports the conclusion, by a preponderance of the evidence, that Pearland ISD met its Child Find obligations, and that any delay between the date Pearland ISD had notice of SS's presence in the district and her likely disability, and the date Pearland ISD determined SS was eligible for services, was not unreasonable and caused SS no injury.  The record evidence also supports the conclusion that the IEP for SS, dated September 27, 2017, was not untimely or unreasonably delayed, that it was appropriate and served to meet SS's visual impairment needs, and that Pearland ISD met its obligation to provide SS a FAPE.  On this record, summary judgment is warranted for Pearland ISD.

### V.      Discussion – Claims against TEA

Plaintiffs allege that TEA policies led to the untimely identification of SS as a student eligible for services under the IDEA.  Plaintiffs also complain that SS was not provided an appropriate IEP, and was thereby denied a FAPE.  TEA responds, and argues that there are only two claims remaining against it in this proceeding: a systematic Child Find claim and a denial of services

claim.  TEA further argues, in its Motion for Summary Judgment on those claims, that the provision of an IEP for SS at Pearland ISD, which afforded SS a FAPE, renders meritless any claim against it for denial of IDEA services.  As for the systematic Child Find claim, TEA maintains that the 8.5% recommended cap was discontinued during the 2016-2017 school year, and that because both HISD and Pearland ISD complied with their Child Find obligations, Plaintiffs have not asserted a viable Child Find claim against it.

Under Texas law, it is the local school districts that are responsible for complying with the IDEA.  *See* TEX. EDUC. CODE § 29.001 ("The agency shall develop, and modify as necessary, a statewide design, consistent with federal law, for the delivery of services to children with disabilities in this state that includes rules for the administration and funding of the special education program so that a free appropriate public education is available to all of those children between the ages of three and 21. The statewide design shall include the provision of services primarily through school districts and shared services arrangements, supplemented by regional education service centers."); TEXAS ADMIN CODE § 89.1050(a) ("Each school district must establish an admission, review, and dismissal (ARD) committee for each eligible student with a disability and for each student for whom a full individual and initial evaluation is conducted pursuant to §89.1011 of this title (relating to Full Individual and Initial Evaluation). The ARD committee is the individualized education program (IEP) team defined in federal law and regulations, including, specifically, 34 Code of Federal Regulations (CFR), §300.321. The school district is responsible for all of the functions for which the IEP team is responsible under federal law and regulations and for which the ARD committee is responsible under state law").  It is only when a school district has not, or cannot, comply with its obligations under the IDEA that the TEA becomes responsible for doing so.  The regulations

governing the IDEA make it clear that state education agencies such as the TEA must directly

provide services under the IDEA if the local school district:

> (i)     Has not provided the information needed to establish the eligibility of the LEA [local education agency] or State agency, or elected not to apply for its Part B allotment, under Part B of the Act;
>
> (ii)    Is unable to establish and maintain programs of FAPE that meet the requirements of this part;
>
> (iii)   Is unable or unwilling to be consolidated with one or more LEAs [local education agencies] in order to establish and maintain the programs; or
>
> (iv)    Has one or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of these children.

34 C.F.R. § 300.227(a).  But, despite the responsibilities under the IDEA falling primarily to local

school districts, state education agencies may, in some circumstances, be liable for violations of the

IDEA.  *St. Tammany Parish Sch. Bd. v. State of Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998).

Here, the two claims that remain against TEA can be resolved by reference to the resolution

of the claims against HISD and Pearland ISD.  First, the denial of services claim against TEA is

defeated by the resolution of the denial of services claim against Pearland ISD.  In particular, the

hearing officer found, and the evidence in the record shows, that Pearland ISD evaluated SS, and

prepared an appropriate IEP for SS for the 2017-2018 school year.  That appropriate IEP served to

ensure SS a FAPE.  Because Pearland ISD did not deny SS a FAPE, TEA cannot have denied SS

a FAPE.  Upon this record there was no denial of services for which TEA could be liable.

As for the alleged Child Find violations, it must be noted that the TEA's policies and

procedures for ensuring that school districts can and do find students with likely disabilities are far

from perfect.  As explained by Plaintiffs throughout this case, there is no policy or procedure at the

state level that allows for the identification and tracking of all visually impaired students in the state.

The Registry compiled and maintained by the Texas School for the Blind and Visually Impaired does not function in that way,[9] and TEA has not, in any event, mandated that school districts use the Registry to "find" students with visual impairments.  Moreover, even if the Registry had been a mandated source for identification of visually impaired students, there is no evidence in the record that SS would have been found by either HISD or Pearland ISD during the time period at issue in this case.  SS was on the registry in 2009 and 2010 when she was identified by HISD as eligible for preschool services, but was not on the Registry thereafter once she was enrolled in private school.  There is, therefore, no evidence that any expanded use of the Registry would have made any difference in this case.

Beyond that, the hearing officer found that HISD fulfilled its Child Find obligations for the time period that was not subject to the statute of limitations, and Pearland ISD did as well.  Those determinations are supported by the record evidence, and should be upheld on virtually *de novo* review herein.  Those determinations, likewise, defeat Plaintiffs' claim against TEA based on the same alleged Child Find violations.

In all, because there was no actionable denial of IDEA services by HISD and Pearland ISD, and no actionable violation by HISD and Pearland ISD of their Child Find obligations under the IDEA, there is no viable claim against TEA and summary judgment in TEA's favor is warranted.

---

[9] Dr. Pogrund explained at the hearing that the TSBVI Registry is "done every year in the beginning of January for that previous year of the current students enrolled in that January window.  It's like a window picture in that moment in time.  So I would imagine she was counted, when she was PPCD (preschool), by Houston ISD.  And them when she left the district, I guess they no longer would count her.." AR 2391-92.  She also testified that there is no one who "connect[s] the list that the Texas Education Agency keeps of the visually impaired children with the individual districts to let them know that they have a visually impaired student living in their district." AR 2393

VI.     **Conclusion and Recommendation**

Based on the foregoing and the conclusion that Pearland ISD did not violate its Child Find obligations under the IDEA, and provided SS with an appropriate IEP, and a FAPE, as found by the hearing officer in his December 8, 2017 decision, the Magistrate Judge RECOMMENDS that Pearland Independent School District's Motion for Summary Judgment (Document No. 124) be GRANTED, and Plaintiff's Motion for Partial Summary Judgment against Pearland Independent School District (Document No. 117) be DENIED.

In addition, based on the foregoing and the conclusion that Pearland ISD offered SS an IEP that was both appropriate and afforded her a FAPE, and that neither HISD nor Pearland ISD violated their Child Find obligations under the IDEA, and that TEA has no liability to Plaintiffs as a consequence, the Magistrate Judge RECOMMENDS that Texas Education Agency's Motion for Summary Judgment (Document No. 129) be GRANTED, and that Plaintiffs' Motion for Partial Summary Judgment against Texas Education Agency (Document No. 120) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The

original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 9th day of March, 2021.


Frances H. Stacy
United States Magistrate Judge